149 F.3d 997
 98 Cal. Daily Op. Serv. 5539, 98 Daily Journal
D.A.R. 7729
Chineina GRAHAM, on behalf of themselves and all other
persons similarly situated; Masaichy Stephen, on behalf of
themselves and all other persons similarly situated; Kether
Uruno, on behalf of themselves and all other persons
similarly situated; Asi Auputiw, on behalf of themselves
and all other persons similarly situated; Nameuo Pillias,
on behalf of themselves and all other persons similarly
situated; Sanres Katuo, on behalf of themselves and all
other persons similarly situated; Tionis Rechy, on behalf
of themselves and all other persons similarly situated;
Saimon Casiano, on behalf of themselves and all other
persons similarly situated; Chikiwo Asenis, on behalf of
themselves and all other persons similarly situated; Achie
Engichy, on behalf of themselves and all other persons
similarly situated; Sandy Nedlec, on behalf of themselves
and all other persons similarly situated; After Ludwig;
Anna Joseph Liwis; Dita Welle; Obtena Kelep; Sincer
Meitou, on behalf of the Estate of Nor Meitou; Janice Iro,
on behalf of Rinner Simiron; Remigio Welle; Charles
Rialong; Jonathan Achimi; Norenty Sikemen; Naieko Eis;
Care Achime, on behalf of the Estate of Achimi Onochi;
Funumi Otto; Tingo Ham; Airin Saner, on behalf of the
Estate of Machuko Sanger; Itosy Achanto; Frank Fernando;
Sesi Salle; Messy Achanto; Misa Sewen; Manner Namelo;
Iowanes Ukaw; Menisio Fritz; Takesy Simirai; Sanokin
Namelo; Seker Afin; Immaculate Antonin; Francis Nethon;
Nariano Taro; Ines Munich; Reichiro Reus; Nisie Chutaro;
Mino Rudolph; Sanchy Louis; Eto Sykap; Hanry Benry;
Natis Ekichy; Sarae Atter; Sisei Saltfish; Ariok Kaori;
Kachume Aniwin; Sikichi Epineisar; Dakos Telep; Tokiko
Ar; Alouis Antonious; Masaichy Simi; Sik Muritok; Petiri
Fred; Apenis Murano; Umoumoch James; Fumie Opokunong;
Finoen Chaine; Spancer Opokunong; Onger Fine; Kaichiro
Alaphen; Kenrita Ephini; Dickson Joywell; Marcy Willy;
Sino Shiro; Tachuo Rongeni; Kafoto Two; Sinori Meitou;
Sanning Welle; Timan Jappan; Spiter Techuo; Letis Fred;
Paul Refinong; Neioru Nakamura, Plaintiffs-Appellants,
v.
FEDERAL EMERGENCY MANAGEMENT AGENCY, James Lee Witt,
Director, Federal Emergency Management Agency, and Shirley
Mattingly, Director, Region IX, Federal Emergency Management
Agency, Defendants-Appellees.
 No. 97-15590.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 10, 1998.
Decided July 15, 1998.
 
 Charles Greenfield, Micronesian Legal Services Corporation, Pohnpei, The Federated States of Micronesia, for plaintiffs-appellants.
 Frank W. Hunger, Assistant Attorney General, Michael J. Yamaguchi, United States Attorney, Barbara L. Herwig, Attorney, Appellate Staff, and Jacob M. Lewis, Attorney, Appellate Staff, United States Department of Justice, Civil Division, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. C-95-4635 DLJ.
 Before: D.W. NELSON, BOOCHEVER, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 This case presents the issue whether individuals may sue the Federal Emergency Management Agency ("FEMA") and its officials for allegedly unlawful withdrawing of disaster relief funds while the individuals' appeals of their applications for federal "individual and family grants" were still either pending or approved but unpaid. The district court ruled that standing and sovereign immunity doctrines barred such suits. We affirm in part and reverse in part. We hold that applicants who had not established at the time of the withdrawal that their applications were meritorious lack standing to sue. At the same time, we conclude that applicants whose applications had been approved have standing to file suit under § 10(a) of the Administrative Procedure Act. We also hold that these individuals' claims are not subject to dismissal under Fed.R.Civ.P. 12(b)(6) on the ground of sovereign immunity.
 
 I. BACKGROUND
 
 2
 In November of 1990, Typhoon Owen struck the Federated States of Micronesia ("FSM"), devastating its Chuuk and Yap states. Then-President Bush declared the states major disaster areas, thus invoking the Stafford Disaster Relief and Emergency Assistance Act of 1974 ("Stafford Act"), 42 U.S.C. §§ 5121-5204c. The FSM, by compact with the United States, is eligible (like any other U.S. state) for disaster relief funds under the Stafford Act, through programs administered by the U.S. government's Federal Emergency Management Agency ("FEMA"). See 42 U.S.C. § 5122; Compact of Free Association, Pub.L. No. 99-239, 99 Stat. 1800, 1816, at § 221(a)(2) (1985), reprinted at 48 U.S.C. § 1901. On February 12, 1991, the FSM submitted to FEMA an "administrative plan" by which it proposed to administer an "individual and family grant program" to provide disaster relief funds to its eligible citizens. FEMA approved the plan the next day and agreed to provide such funds.
 
 
 3
 The Stafford Act's individual and family grant program enables the President, through FEMA, "to make a grant to a State for the purpose of making grants to individuals or families adversely affected by a major disaster." 42 U.S.C. § 5178(a). The federal share of a grant to an individual or family under this section "shall be equal to 75 percent of the actual cost incurred"; the state must pay the remaining 25 percent. 42 U.S.C. § 5178(b). As indicated by the statute's text, the program itself is administered by the recipient-state. FEMA provides money to the state, and the state pays funds to its citizens who it determines are eligible under FEMA's rules for disaster relief. In addition, in administering its plan, the FSM--as is required by regulations, see 44 C.F.R. § 206.131(e)(1)(ii)(H)--agreed to allow appeals by unsuccessful applicants and to grant meritorious appeals that were supported by documentation.
 
 
 4
 The program is limited by regulation to 180 days, but FEMA may grant as many 90-day extensions as it deems appropriate. See 44 C.F.R. §§ 206.131(j)(1)(iii) and (j)(2). From February to September of 1991, the FSM administered its individual and family grant program for 270 days. The defendants contend that during this time FEMA discovered that the FSM's Chuuk State Appeals Board was approving claims without requiring proper documentation. The plaintiffs assert that the Appeals Board acted consistent with the administrative plan and regulations and that any deficiencies in its procedures were promptly cured. Nonetheless, when the FSM requested a second 90-day extension of the program, FEMA denied the request and ended the program with a number of claims approved by the Appeals Board still unpaid and with a number of others still pending before the Board. FEMA thereafter audited the program and confirmed its refusal to provide funds for any of the pending or approved appeals in light of its complaints regarding the procedures followed by the Chuuk State Appeals Board. Volland Aff. at p 15.
 
 
 5
 On December 26, 1995, eighty-three individuals, all residents of Chuuk State who either had their appeals approved by the FSM or whose appeals were never decided, filed the present action against FEMA, James Lee Witt, its Director, and Shirley Mattingly, its Regional Director in charge of the territory that includes the FSM. The plaintiffs allege that the defendants violated § 10(a) of the Administrative Procedure Act (APA), the Stafford Act, and the Due Process Clause of the Fifth Amendment by terminating the individual and family grant program without paying them funds to which they are entitled. They seek declaratory and injunctive relief that would require FEMA (1) to provide its share of funds for their approved appeals; and (2) to ensure the completion of the pending appeals, and then to issue the federal share of all awards to which they become entitled.
 
 
 6
 On February 11, 1997, the district court dismissed all of the plaintiffs' claims with prejudice on the ground that the plaintiffs lacked standing to sue FEMA and its officers. Alternatively, the court held that the defendants were immune from suit because FEMA's decisions to withhold funds and to deny the FSM's request for an extension of the program fell within the agency's unreviewable discretion. This timely appeal followed.
 
 II. STANDING
 
 7
 We first consider whether any or all of the plaintiffs have standing to bring this suit. Since the Stafford Act does not provide for a private right of action upon which the plaintiffs may rely,[1] and since the protections of the Due Process Clause in this case extend only as far as the plaintiffs' statutory rights,[2] the only real question is whether the plaintiffs may bring suit under § 10(a) of the APA. As with any statute, there are both constitutional and prudential dimensions to standing under the APA. Article III's "case or controversy" requirement dictates an "irreducible constitutional minimum" to bring suit in federal court, which consists of three elements: (1) an injury in fact that is concrete and particularized; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be redressed by a favorable decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). There also is a significant prudential component of the APA's standing inquiry. Plaintiffs must show that they fall within the "zone of interests" to be protected or regulated by the underlying statute in question. National Credit Union Admin. v. First Nat'l Bank & Trust Co., --- U.S. ----, ----, 118 S.Ct. 927, 933, 140 L.Ed.2d 1 (1998). "For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); see also Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir.1987) (applying this standard to motions to dismiss in general).
 
 
 8
 At the outset, we separate the plaintiffs into two categories: (A) those who never had their appeals processed; (B) those who had their appeals decided and approved by the FSM. We conclude that only the second group of plaintiffs has standing to sue.
 
 
 9
 A. Plaintiffs Whose Appeals Have Never Been Decided
 
 
 10
 The district court held that "for those plaintiffs whose appeals have never been decided, the Court finds that their loss is too speculative to satisfy the injury requirement of Article III." We agree.
 
 
 11
 A plaintiff's asserted injury must be "actual or imminent." Lujan, 504 U.S. at 564, 112 S.Ct. 2130. In suits against the government, therefore, when plaintiffs have not already suffered a tangible loss at the government's hands, they must establish a substantial likelihood that they "personally" will be injured in the future by the government's policy. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-03, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). Insofar as the injury of plaintiffs whose appeals have never been decided is that they did not receive disaster relief funds from FEMA, these plaintiffs cannot establish a substantial likelihood that, absent FEMA's allegedly improper withdrawal of funds, they would have received such funds. Any right to such funds depends entirely on whether the FSM, which is not a party to this suit,[3] would reverse its initial determination and grant their appeals. Hence, it is "purely speculative" whether an injunction from this court would ever result in these plaintiffs receiving individual and family grants. See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 42-43, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (holding that respondents lacked standing because it was "purely speculative" whether a court order "would result in these respondents' receiving the ... services they desire"); Warth, 422 U.S. at 505-07, 95 S.Ct. 2197 (holding that plaintiffs lacked standing because they failed to allege a substantial probability that, absent defendants' challenged conduct, they would have been able to avoid asserted injury).
 
 
 12
 These plaintiffs might also define their injury in procedural terms: The court could construe their claim as arguing that they were injured by not having their appeals decided. See Complaint at p 100 (alleging that the defendants' "actions in failing to ... insure completion, of plaintiffs' IFG administrative appeals" was unlawful). That injury, however, is not "fairly traceable" to FEMA's conduct. See Allen v. Wright, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). The FSM's own plan guidelines required it to decide all appeals within 60 days, and the Stafford Act's regulations required the FSM to "complete all award activity ... within the 180 days [and subsequent 90-day extension]." 44 C.F.R. § 206.131(j)(1)(iii).[4] Thus, any such "procedural" claim would have to be directed at the FSM.
 
 
 13
 B. Plaintiffs Whose Appeals Were Decided Favorably
 
 
 14
 The plaintiffs who already have had their appeals favorably decided by the FSM are in a decidedly different position than the other plaintiffs. The district court nonetheless held that these plaintiffs also lacked standing under the Constitution's redressability prong and under the prudential "zone of interests" test. We reverse this determination and hold that these plaintiffs have standing to sue under § 10(a) of the APA.
 
 1. Constitutional Dimension
 
 15
 While the district court found that these plaintiffs had satisfied Article III's injury-in-fact and causation requirements,[5] it held that they had failed to establish redressability because it lacked jurisdiction over the FSM and that, even if it ordered FEMA to pay to the FSM the promised 75 percent of all costs incurred in the individual and family grant program, "there is no guarantee that the FSM would reinstate its IFG program and pass those funds through to the plaintiffs." (emphasis added). The plaintiffs argue that the district court erred in requiring them to make an unduly high showing of redressability, and that their claims satisfy the correct standard--that it is "likely" that their injury will be redressed by a favorable decision. We agree.
 
 
 16
 Plaintiffs need not demonstrate that there is a "guarantee" that their injuries will be redressed by a favorable decision. In fact, we recently emphasized that plaintiffs "must show only that a favorable decision is likely to redress [their injuries], not that a favorable decision will inevitably redress [their injuries]." Beno v. Shalala, 30 F.3d 1057, 1065 (9th Cir.1994) (citing Lujan, 504 U.S. at 561, 112 S.Ct. 2130). The plaintiffs who already have had their appeals favorably decided by the FSM satisfy this standard. In cases similar to the one before us, the Supreme Court has stated that plaintiffs lack standing primarily when the funding agency is not before the court, Lujan, 504 U.S. at 568-71, 112 S.Ct. 2130 (plurality opinion), or when redressability "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or predict." ASARCO, Inc. v. Kadish, 490 U.S. 605, 615, 109 S.Ct. 2037, 104 L.Ed.2d 696 (1989) (plurality opinion). See also Beno, 30 F.3d at 1065 (citing with approval these plurality holdings). Neither of these problems is present in this case. First, the funding agency (FEMA) is before the court. Second, the FSM's decision whether to pass on to these plaintiffs any funds received from FEMA is not "unfettered." To the contrary, the agreement it signed with FEMA, which is mandatory and binding under the regulations, requires it "[i]mmediately upon receipt of funds, [to make] disbursements ... to applicants." FEMA-FSM Agreement of Jan. 8, 1991, Exhibit A at 2.[6] The agreement further provides that all excess funds "(including those which the FSM passes on to applicants) ... shall be returned to FEMA." Id. at 3 (emphasis added). Thus, the FSM would not even have any incentive to keep individual and family grant funds for itself. Finally, we would in any event presume that a public agency that receives funds that are for the specific purpose of compensating specific individuals, in specific amounts set forth in claims that have been approved by that agency, would not divert the funds for its own use. See, e.g., Banks v. Secretary of Indiana Family & Soc. Servs. Admin., 997 F.2d 231, 241 (7th Cir.1993).
 
 
 17
 Under these circumstances, the fact that FEMA is required by law to give the funds to the plaintiffs through the conduit of the FSM, an entity which is beyond the court's reach, does not adversely affect these plaintiffs' ability to seek relief in federal court. To paraphrase the Seventh Circuit's analysis of a comparable case, "briefly put," the plaintiffs argue that FEMA "has deprived it of money to which it otherwise would have been entitled." Family & Children's Center, Inc. v. School City of Mishawaka, 13 F.3d 1052, 1059 (7th Cir.1994) (holding that Children's Center could assert right of disabled children to receive money under the IDEA even though Act requires defendant to provide money only "to children"). The defendants' speculation that the FSM "might conspire to evade th[e] mandatory language" of the regulations and its agreement "does not defeat plaintiffs' standing." Beno, 30 F.3d at 1066; see also Banks, 997 F.2d at 241 (rejecting argument that plaintiffs' injuries were not redressable because the Secretary "lacks adequate means to insure a state's compliance with the Medicaid Act"). There is, certainly, a substantial likelihood that these plaintiffs will receive funds from FEMA if it is ordered to provide them. That is sufficient for our purposes.
 
 2. Prudential Dimension
 
 18
 The plaintiffs bring suit under § 10(a) of the APA, which entitles persons aggrieved by final agency action to seek judicial review. See 5 U.S.C. § 702. Article VII § 172(b) of the Compact of Free Association specifically provides:
 
 
 19
 (b) The Governments of ... the Federated States of Micronesia and every citizen of ... the Federated States of Micronesia shall be considered a "person" within the meaning of ... the judicial review provisions of the Administrative Procedures Act, 5 U.S.C. §§ 701-706....
 
 
 20
 The Supreme Court has interpreted that statute
 
 
 21
 to impose a prudential standing requirement in addition to the requirement[s] imposed by Article III.... For a plaintiff to have prudential standing under the APA, "the interest sought to be protected by the complaintant [must be] arguably within the zone of interests to be protected or regulated by the statute ... in question."
 
 
 22
 National Credit Union Admin. v. First Nat'l Bank & Trust Co., --- U.S. ----, ----, 118 S.Ct. 927, 933, 140 L.Ed.2d 1 (1998) (quoting Association of Data Processing Serv. Org. v. Camp, 397 U.S. 150, 152-53, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) (brackets and ellipsis in original)). The district court held that the plaintiffs failed to satisfy this prudential requirement because the "mechanism" that the Stafford Act employs to disburse funds is "by granting funds to the States, and not to individuals directly." Thus, the district court concluded, "it appears that the [individual and family grant] program was really designed to help States, rather than individuals, in dealing with major disasters within their borders." We disagree with this highly formalistic reasoning. The plaintiffs in this case--the victims of a natural disaster--most certainly fall within the Stafford Disaster Relief Act's zone of interests.
 
 
 23
 The Supreme Court has explained the zone-of-interests inquiry as follows:
 
 
 24
 The "zone of interest" test is a guide for deciding whether, in view of Congress' evident intent to make agency action presumptively reviewable, a particular plaintiff should be heard to complain of a particular agency decision. In cases where the plaintiff is not itself the subject the of contested regulatory action, the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit. The test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff.
 
 
 25
 Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 399-400, 107 S.Ct. 750, 93 L.Ed.2d 757 (1987); see also United States v. Mindel, 80 F.3d 394, 397 (9th Cir.1996). The Court, in fact, recently clarified this rule, holding that APA plaintiffs need only show that their interests fall within the "general policy" of the underlying statute, such that interpretations of the statute's provisions or scope could directly affect them. National Credit Union Admin., --- U.S. at ----, 118 S.Ct. at 933 (quoting Data Processing, 397 U.S. at 157, 90 S.Ct. 827).
 
 
 26
 The plaintiffs' interests in this case are in no way "marginally related to or inconsistent with the purposes implicit in the statute." Clarke, 479 U.S. at 399, 107 S.Ct. 750. To the contrary, the Stafford Act expressly authorizes FEMA "to make a grant to a State for the purpose of making grants to individuals or families adversely affected by a major disaster." 42 U.S.C. § 5178(a) (emphasis added). The regulations state that "[t]he [individual and family] grant program is intended to provide funds to individuals or families to permit them to meet those disaster-related expenses or serious needs for which assistance from other means is either unavailable or inadequate." 44 C.F.R. § 206.131(b). It is therefore clear that the Stafford Act was primarily designed to help individuals, not states, obtain disaster relief. Even if states that receive disaster assistance are also within the Act's zone of interests, the Act's real beneficiaries, the individuals and families who suffer losses due to natural disasters, fall well within the Act's general policy concerns.[7]
 
 III. SOVEREIGN IMMUNITY
 
 27
 A party bringing an action against the United States "bears the burden of demonstrating an unequivocal waiver of immunity." Mitchell v. United States, 787 F.2d 466, 467 (9th Cir.1986). Courts, however, must start with "a strong presumption that Congress intends judicial review of administrative action." Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 670, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986). After considering these seemingly contradictory principles, the district court concluded that FEMA and its officials were immune from suit in this case because their actions constituted unreviewable acts of agency discretion. On appeal, the plaintiffs assert that the district court erred because the APA unequivocally waives sovereign immunity with respect to their claims for injunctive and declaratory relief. We conclude that the district court erred in granting the defendants' 12(b)(6) motion on the basis of agency discretion.
 
 
 28
 Subject to other prerequisites not contested here, § 10(a) of the APA expressly provides for the judicial review of agency actions unless the underlying statute at issue precludes such review or the agency action is committed to agency discretion by law. See 5 U.S.C. §§ 701-02.[8] The defendants contend that the Stafford Act immunizes their challenged actions under the APA's "agency discretion" exception. The Stafford Act provides in relevant part:
 
 
 29
 The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.
 
 
 30
 42 U.S.C. § 5148 (emphasis added). This provision "preclude[s] judicial review of all disaster relief claims based upon the discretionary actions of federal employees." Rosas v. Brock, 826 F.2d 1004, 1008 (11th Cir.1987).
 
 
 31
 Here, the Stafford Act's regulations provide that FEMA may withdraw funds if the state-grantee (here, the FSM) "has failed to comply with grant award conditions." 44 C.F.R. § 13.21(g)(1)(i); see also 44 C.F.R. § 206.131(h) (permitting FEMA to suspend approval of state's voucher for individual and family grant funds "until deficiencies are corrected").[9] Hence, the defendants maintain that they exercised their unreviewable discretion in withdrawing payments on the ground that the FSM was not complying with the award conditions.[10] Moreover, whether or not the Appeals Board actually violated the award conditions is, according to the defendants, not the issue; they contend that their assertion that it did is enough to insulate their decision against judicial review.[11] The remaining plaintiffs take issue especially with the latter position. They argue that the defendants had discretion to withdraw funds only if the FSM actually violated the award conditions, and that whether or not the FSM did so is a question of fact to be determined in the normal course of litigation.[12] Cf. Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (holding that federal court had jurisdiction to review Secretary of Health and Human Services' decision to disallow reimbursement of funds based on his determination that a state's Medicaid expenditures did not fall within regulations).
 
 
 32
 We agree with the plaintiffs. We cannot accept the defendants' argument at this stage of the proceedings because it would require us to resolve a disputed issue of material fact against the remaining plaintiffs. The Stafford Act's regulations grant FEMA the discretion to withhold individual and family grant funds only if the grantee-state has not complied with the award conditions. While we think it plain that under the Stafford Act, just as under the more well-known Federal Tort Claims Act, see 28 U.S.C. § 2680(a), "decisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit," Fang v. United States, 140 F.3d 1238, 1241-42 (9th Cir.1998), the "exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). In that event, the employee and the agency have "no rightful option but to adhere to the directive." Id.
 
 
 33
 Here, the duty of FEMA is clearly prescribed by the Stafford Act's applicable regulations. If the state has complied with the award conditions, and has satisfied other criteria not contested here, "[FEMA] shall not withhold payments." 44 C.F.R. § 13.21(g)(1) (emphasis added). To put it affirmatively, because all eligibility determinations by the state appeals board are final, 44 C.F.R. § 206.131(e)(1)(ii)(H), FEMA must make the grant payments sought by the remaining plaintiffs unless the FSM has violated the award conditions. The regulations further mandate that "[c]ash withheld for failure to comply with grant award condition, but without suspension of the grant, shall be released to the grantee upon ... compliance." 44 C.F.R. § 13.21(g)(2) (emphasis added). Even if FEMA suspends or terminates a grant program, it must still release funds for noncancellable costs "properly incurred by [the state] before the effective date of the suspension or termination, and not in anticipation of it." 44 C.F.R. § 13.43(c)(1). Nothing in the regulations reserves to FEMA the unreviewable right to determine whether a state has complied with the objective requirements of the award conditions. Rather, by their silence, they indicate that the determination is subject to review in the same manner as other administrative decisions.
 
 
 34
 Although the defendants allege that the FSM adjudicated appeals without proper documentation, the plaintiffs, through an affidavit by Sanphy William, the Chairman of the Individual and Family Grant Appeals Board for Chuuk State, assert that the Board "followed closely the FSM Administrative Plan" and made its decisions "consistent with the requirements of [that plan]." William Aff. at pp 5, 8. According to the plaintiffs, FEMA would not accept decisions supported by proper documentation under the plan.
 
 
 35
 At this stage of the proceedings, we must assume the plaintiffs' contentions regarding these contested facts to be the truth. See, e.g., Love v. United States, 915 F.2d 1242, 1245 (9th Cir.1989); see also Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) (stating that in 12(b)(6) motions, courts must "presume[ ] that general allegations embrace those specific facts necessary to support the claim"). We, therefore, must assume for purposes of this appeal that FEMA was obligated by its own regulations to process and to release to the FSM the appropriate funds for disbursement to the plaintiffs whose appeals have been finally decided in their favor. Accordingly, we must reverse the district court's order granting the motion to dismiss on the ground of sovereign immunity. If, however, the defendants can establish on remand that their determination that the Chuuk State Appeals Board violated the conditions of the plan was not arbitrary or capricious, then their decision not to make the payments sought by the remaining plaintiffs will be shielded by the discretionary function exception. See 5 U.S.C. § 706(2)(A); see also Rhode Island Higher Educ. Assistance Auth. v. Secretary of Educ., 929 F.2d 844, 847, 855 (1st Cir.1991) (reviewing Secretary's justifications for withdrawing funds under arbitrary and capricious standard when Secretary had authority to withhold funds for failure to comply with conditions of agreement); Education Assistance Corp. v. Cavazos, 902 F.2d 617, 619-22 (8th Cir.1990) (same); Dressman v. Costle, 759 F.2d 548, 555-56 (6th Cir.1985) (same).
 
 IV. INTERNATIONAL LAW ISSUES
 
 36
 The defendants also assert that, even if the plaintiffs may otherwise invoke this court's jurisdiction, the Compact of Free Association, through which the services of FEMA are made available to the FSM, precludes judicial review of the plaintiffs' claims. In doing so, they make a somewhat different argument than they made below. In the district court, the defendants maintained that this case presented a non-justiciable "political question" because relief from a federal court "would constitute impermissible judicial interference with the executive function of foreign policy." Because the district court dismissed the suit on other grounds, it declined to reach this argument. On appeal, the defendants have changed course somewhat, and now contend that specific provisions in the Compact and its corollary agreement, the Federal Programs and Service Agreement Concluded Pursuant to Sections 221, 224, 225 and 232 of the Compact of Free Association, deprive the federal courts of jurisdiction to adjudicate the plaintiffs' claims. In light of the complexity of this issue, the fact that the district court did not address it, and the defendants' shifting position, we do not decide it here. Instead, we prefer that the district court consider it in the first instance, after fuller briefing. Accordingly, on remand the district court shall decide, inter alia, the question whether the remaining plaintiffs' attempt to obtain federal judicial relief under the APA is inconsistent with the terms of the Compact, including §§ 172(b), 221, 423, and 463(a), and the Federal Programs and Service Agreement.
 
 V. CONCLUSION
 
 37
 The district court's decision to dismiss the claims of the plaintiffs whose appeals were never decided by the FSM is AFFIRMED. Its decision to dismiss the claims under the APA of the plaintiffs whose appeals were decided favorably by the FSM is REVERSED. The case is REMANDED for further proceedings consistent with this opinion. Each party shall bear its own costs.
 
 
 38
 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 
 
 
 [1]
 The plaintiffs' attempt to fashion causes of action out of two parts of the Stafford Act is unavailing. The first provision upon which they rely, 42 U.S.C. § 5189a(b), provides no right to sue and, in any event, applies only to the states that implement individual and family grant programs. See infra n. 12. The second provision, 42 U.S.C. § 5151(a), which requires FEMA to implement programs in an equitable and impartial manner, clearly is aimed at proscribing discrimination (per sex, race, etc.) in disbursements. Since the plaintiffs do not allege any facts that point to discriminatory actions on the part of FEMA, the plaintiffs' reliance on § 5151(a) is without merit
 
 
 [2]
 The plaintiffs' due process claim is premised on their assertion that they "have a statutory entitlement to the [individual and family grant] disaster assistance program." Second Amended Complaint at p 109. Insofar as they have such an entitlement, they may obtain all the relief they request under the provisions of the APA. We, therefore, decline to address the plaintiffs' Fifth Amendment claim and affirm the district court's denial of this claim, but order that it be dismissed without prejudice
 
 
 [3]
 Under the Compact of Free Association, the FSM is immune from suit in the United States. See Compact, § 174(a)
 
 
 [4]
 Nor may these plaintiffs state a claim that FEMA should have granted another extension to the FSM to complete the disposition of their appeals. The decision whether to grant such an extension rests within the unreviewable discretion of FEMA. See 44 C.F.R. § 206.131(j)(2) ("[t]he Regional Director [of FEMA] may approve the request" for extension); see also infra Part III (describing bar on reviewing FEMA's discretionary decisions)
 
 
 [5]
 We agree that these plaintiffs have satisfied these requirements, and the defendants do not argue otherwise. These plaintiffs allege that but for the defendants' withdrawal of funding they would have received money to which they are entitled
 
 
 [6]
 The agreement between the FSM and FEMA was made pursuant to 44 C.F.R. § 206.44, and "imposes binding obligations" on the FSM with regard to its receipt of funds for "damage resulting from Typhoon Owen." Nothing in the agreement or regulations indicates that the FSM's "obligations" under the agreement have somehow expired
 
 
 [7]
 Because the plaintiffs' claims fall within the underlying statute's zone of interests, they need not also demonstrate that they seek to vindicate their own particular legal rights under the underlying statute at issue. They are asserting their own legal rights under the APA. See Catholic Social Serv. v. Shalala, 12 F.3d 1123, 1126 (D.C.Cir.1994) (holding that once plaintiffs suing under § 10(a) of the APA satisfy its zone-of-interest inquiry, they "need not satisfy the third party interest standard"); Rogers v. Brockette, 588 F.2d 1057, 1061 & n. 8 (5th Cir.1979) (same)
 
 
 [8]
 APA § 702 reads in relevant part:
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party....
 5 U.S.C. § 702 (emphasis added). It is worth adding that the plaintiffs' request for an injunction that would require FEMA to pay its share of funds is not considered a claim for "money damages," and, therefore, is not barred by sovereign immunity. See Bowen v. Massachusetts, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988) (holding that suits seeking actual funds owed to claimants are suits for "injunctive" relief under APA § 702); Blue Fox Inc. v. Small Bus. Admin., 121 F.3d 1357, 1361 (9th Cir.1997) (same).
 
 
 [9]
 While it is not perfectly clear from the regulations, both sides agree that Part 13.21, which describes FEMA's payment obligations for charges incurred by states, applies to funds that are earmarked for individual and family grants. In this sense, the regulations resemble the Medicaid regulations, which speak in terms of "reimbursements," even though some of the money the federal government provides is actually paid in advance to the recipient-states. See Bowen, 487 U.S. at 883-84, 108 S.Ct. 2722
 
 
 [10]
 The specific violation the defendants allege is that the Chuuk State Appeals Board was awarding funds without requiring proper documentation
 
 
 [11]
 The defendants also argue that they acted within their discretion by declining to grant an additional 90-day extension for the FSM to continue to administer the program. While that decision was surely within their discretion, see 44 C.F.R. § 206.131(j)(2), we understand the defendants to maintain that this action protects them against suit only by the plaintiffs whose appeals were pending when the program ended. Since we have already held that those plaintiffs lack standing, see supra section II.A, we need not address the defendant's "refusal to extend" argument further
 
 
 [12]
 The plaintiffs also assert that, in failing to provide funds for their claims, the defendants violated two additional, non-discretionary provisions of the Stafford Act, 42 U.S.C. §§ 5189a(a) and (b), which prescribe mandatory timetables for deciding individuals' appeals of eligibility determinations. We reject this claim. Section 5189 applied solely to the FSM because under the individual and family grant program the states' decisions regarding appeals of eligibility are final. See 44 C.F.R. § 206.131(e)(1)(ii)(H)