CITY OF SAN BRUNO, Plaintiff,

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY, et al, Defendant.

No. C–00–04412 CRB.

United States District Court, N.D. California.

Oct. 4, 2001.

Lisa K. Puntillo, Michael Duncheon, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, CA, for plaintiff.

Patricia Kenney, Assistant U.S. Attorney, San Francisco, CA, for defendant.

## ORDER DISMISSING CASE

BREYER, District Judge.

During the El Nino rains of 1998, a hillside ("Hillside") near Crestmoor Drive in the City of San Bruno ("San Bruno") collapsed. San Bruno applied for disaster relief from the Federal Emergency Management Agency ("FEMA"). FEMA determined that San Bruno was ineligible for federal aid with regard to the landslide. San Bruno subsequently filed this suit, under the Administrative Procedures Act ("APA"), against FEMA. Now before the court are defendant's motion to dismiss for lack of subject matter jurisdiction and plaintiff's cross-motion for summary judgment. The parties have advised the Court that they waive oral argument. Having carefully reviewed the papers filed by both parties, the Court GRANTS the motion to dismiss for the reasons set forth below.

## BACKGROUND

The federal government provides disaster relief under the Stafford Act, 42 U.S.C. 5124–5204c and regulations promulgated by FEMA. The Stafford Act is triggered when the Governor of the affected state requests that the President declare that a "major disaster exists" and he so declares. 42 U.S.C. § 5170. The request is "based on a finding that the disaster is of such severity and magnitude that effective response is beyond the capabilities of the State and the affected local governments." *Id.* After a disaster has been declared, the affected state and FEMA enter into an agreement under which the state is the initial "grantee" and is responsible for dispersing funds pursuant to the agreement with FEMA. 44 C.F.R. § 204.431(d).

This case concerns the "Public Assistance" program administered under FEMA. 44 C.F.R. § 206.200–206.253. The parties agree that the relevant eligibility requirements are set forth therein. Under the regulations:

[t]o be eligible for financial assistance, an item of work must:

(1) Be required as the result of the major disaster event,

(2) Be located within a designated disaster area, and

(3) Be the legal responsibility of an eligible applicant.

44 C.F.R. § 206.223. The regulation goes on to state that *"[f]acilities* belonging to a public entity may be eligible for assistance when the application is submitted through the State or a political subdivision of the State." *Id.* (emphasis added).

The central dispute in this case concerns the definition of "facility." Section 206.201(c) defines "facility" as "any publicly or privately owned building, works, system, or equipment, built or manufactured, or an *improved and maintained natural feature.*" 44 C.F.R. § 206.201 (emphasis added).

FEMA determined that the Hillside was not a facility under section 206.201(c). Specifically FEMA determined that the Hillside was not an "improved and maintained natural feature." Declaration of Lacy E. Suiter, at 1. This is the only language under which the Hillside could potentially qualify for funding, and San Bruno does not argue that the Hillside is otherwise eligible. FEMA argues that this determination is not subject to judicial review and that even if it is subject to review it can easily survive challenge under the APA. There is a full administrative record of the proceedings before FEMA and the parties agree that summary judgment would be appropriate if the Court finds jurisdiction.

## I. *Standard for Motion*

### A. **Rule 12(b)(6) Motion to Dismiss**

A Rule 12(b)(6) motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted. *See Gilligan v. Jamco Dev. Corp.,* 108 F.3d 246, 249 (9th Cir.1997). Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." *Parks Sch. of Bus., Inc. v. Symington,* 51 F.3d 1480, 1484 (9th Cir.1995). The court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. *See id.* The court must also draw all reasonable inferences in favor of the non-moving party. *See Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987).

### B. **Converting a Motion to Dismiss into a Motion for Summary Judgment**

Pursuant to Rule 12(b)(6), if a motion to dismiss for failure to state a claim upon which relief can be granted presents "matters outside the pleading" to the court, the motion "shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed.R.Civ.P. 12(b). Under Rule 56, summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" if the fact may affect the outcome of the case. *See id.* at 248, 106 S.Ct. 2505. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio,* 125 F.3d 732, 735 (9th Cir.1997). A principal purpose of the summary judgment proce-

dure is to identify and dispose of factually unsupported claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## II. *Sovereign Immunity* [1]

■ Plaintiff brings suit under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.* The APA permits judicial review of agency actions unless "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). Defendant contends that it is immune from suit under the provisions of the Stafford Act. The relevant portion of the Stafford Act provides:

> The Federal Government shall not be liable for any claim based upon the exercise or performance of or the failure to exercise or perform a *discretionary* function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter.

42 U.S.C. § 5148 (emphasis added). "This provision 'preclude[s] judicial review of all disaster relief claims based upon the discretionary actions of federal employees.'" *Graham v. Federal Emergency Management Agency*, 149 F.3d 997, 1005 (9th Cir.1998)(quoting *Rosas v. Brock*, 826 F.2d 1004, 1008 (11th Cir.1987)).

The key issue, then, is whether FEMA's eligibility determination, under 44 C.F.R. § 206.201, is a "discretionary" act. Plaintiffs contend that FEMA's action in declaring the Hillside ineligible for disaster relief—because Hillside was not an "improved and maintained natural feature"— was nondiscretionary and is therefore sub-

ject to review under the APA. The parties agree that if FEMA's action in this case— denying *eligibility* to the Hillside project—is discretionary then there is no subject matter jurisdiction. *See* plaintiff's reply at 1.

Plaintiff further "accepts that FEMA's decision to allocate funding to eligible projects is discretionary." Plaintiff's reply at 2. Plaintiff contends, however, that there is a distinction between eligibility determinations, which are nondiscretionary, and decisions regarding whether to fund eligible projects, which are discretionary. For the reasons set forth below, the Court rejects plaintiff's argument and finds that eligibility determinations within the Public Assistance provisions applicable here are discretionary. Accordingly, the court lacks subject matter jurisdiction to review them.

Both parties place significant reliance on the Ninth Circuit opinion in *Graham v. FEMA*, 149 F.3d 997 (9th Cir.1998), therefore a close examination of that case is warranted. *Graham* arose out of disaster relief provided to individuals in the Federated States of Micronesia (FSM).[2]

The relief program at issue in *Graham* had a statutory duration of 180 days, but FEMA had authority to grant an unlimited number of 90–day extensions. 44 C.F.R. §§ 206.131(j)(1)(iii) and (j)(2). In *Graham* FEMA granted one 90–day extension, but then terminated the program because it determined that the FSM appeals board was improperly approving claims (they were effectively rubber stamping). *Graham*, 149 F.3d at 1000. When FEMA terminated the program 83 individuals sued. The Ninth Circuit divided the plaintiffs into two groups: 1) those whose ap-

---

1. Defendant has moved to dismiss on the basis of standing as well. As will become clear, this is essentially the same inquiry. Plaintiff has no standing because the actions of FEMA in this instance are unreviewable.

2. The FSM is eligible for FEMA relief by compact with the United States.

peals had not been ruled on, and 2) those who had made a successful appeal, but had yet to receive payment. *Id.* at 1001.

The court first addressed standing. It held that plaintiff's with pending, unadjudicated, appeals lacked standing because their injuries were "speculative." *Id.* at 1002. The court refused to recognize a procedural injury, in not having their claims decided, because that injury was traceable to "FSM's own plan guidelines [which] required it to decide all appeals within 60 days." *Id.* The court found that the second group of plaintiffs (those who had successfully appealed but had not received any money) had standing to sue because if FEMA were ordered to make payments to FSM, those individuals were "likely" to receive payment. *Id.* at 1003.

The court then addressed sovereign immunity as it relates to the second group. FEMA's primary argument was that it had discretionary authority to withhold payments because FSM failed to comply with program conditions. The Ninth Circuit disagreed and found that the regulations provided for "discretion to withhold individual and family grant funds *only if* the grantee-state has not complied with the award conditions." *Id.* at 1006 (emphasis added). In short, under the regulations the court found that FEMA had no discretion to withhold unless the award conditions were violated. The court further found that the determination of whether award conditions were violated was nondiscretionary. *Id.*

The circumstances in *Graham* are quite different than in the present case. *Graham* involved funds that had been obligated, and which FEMA attempted to cut off post-obligation. This case involves an initial decision regarding whether to make government funds available. It is undisputed that ultimately FEMA had no obligation to fund reconstruction of San Bruno's Hillside. Furthermore, *Graham* arguably concerned a systematic failure. When FEMA withdrew funding all eighty-three plaintiffs were awaiting final action on their claims. Here San Bruno was denied program eligibility, but had received final action on its claim. Indeed, its claim had gone through two levels of appeal.

■ San Bruno's argument that eligibility is nondiscretionary while actual funding is discretionary, finds some support in the program description provided by the government. That description states that under the regulations "eligible work is approved or denied" by FEMA. FEMA's brief at 5. This suggests that discretion is exercised when FEMA decides to approve or deny, not when eligibility is determined. Plaintiff's argument hinges on making this distinction, for it is "plain that under the Stafford Act 'decisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit.' " *Graham*, 149 F.3d at 1006 (quoting *Fang v. United States*, 140 F.3d 1238, 1241–42 (9th Cir.1998) on the Federal Tort Claims Act).

■ But if one steps away from the details and examines FEMA's action in a broader context, the weakness of San Bruno's argument is exposed. San Bruno's argument elevates form over substance. The heart of FEMA's mission is to distribute limited funds in response to national disasters. Distributing limited funds is inherently a discretionary responsibility. Eligibility determinations and then subsequent decisions regarding the funding of eligible projects are steps in this discretionary process.

The Supreme Court laid out a commonsensical definition of "discretionary" in

*Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), in interpreting the Federal Tort Claims Act. The analysis is two-pronged. First, is "the action [ ] a matter of choice?" *Id.* at 536, 108 S.Ct. 1954. Secondly, does "the challenged action involve[ ] a policy judgment?" *Marlys Bear Medicine v. U.S. ex rel. Secretary of Dept. of Interior,* 241 F.3d 1208, 1214 (9th Cir.2001)(citing *Berkovitz,* 486 U.S. at 539, 108 S.Ct. 1954). In this case, it is undisputed that FEMA ultimately has discretion regarding which projects to fund. Furthermore, the allocation of limited resources among victims of disaster is clearly a matter involving "policy judgment." *United Power Association (UPA) v. FEMA,* No. A2–99–180, 2000 WL 33339635 (D.N.D. Sept.13, 2000) provides an excellent case in point. UPA also involved an eligibility determination. The court found that the particular project was ineligible for funding because the necessary work was not "required as a result of a major disaster." 44 C.F.R. § 206.223(1). The court determined that such eligibility determinations were exactly the type that were protected by the immunity provided in 42 U.S.C. § 5148. *UPA,* 2000 WL 33339635, at *3–*4.

The weakness of San Bruno's argument is further exposed by an examination of the consequences of permitting review of FEMA eligibility determinations. If every applicant could litigate a denial of eligibility the purpose of sovereign immunity would be defeated. FEMA's resources would be diverted to defending eligibility decisions. With good reason, many courts to take up this issue have quoted approvingly the statement of Representative Whittington, Chairman of the House Public Works Committee:

> We have further provided that if the agencies of the Government make a mistake in the administration of the Disaster Relief Act that the Government may not be sued. Strange as it may seem, there are many suits pending in the Court of Claims today against the Government because of alleged mistakes made in the administration of other relief acts, suits aggregating millions of dollars because citizens have averred that the agencies and employees of Government made mistakes. We have put a stipulation in here that there shall be no liability on the part of the Government.

H.R. 8396, 81st Cong., 2d Sess., 96 Cong. Rec. 11895, 11912 (1950). Alternatively, allowing San Bruno to pursue this claim could have the perverse effect of encouraging FEMA to declare all applicants to be "eligible" regardless of the merits. Then decisions to deny funding would be unreviewable.

San Bruno has cited to no case that offers any real support to the proposition that FEMA eligibility determinations are nondiscretionary. All the cases suggest just the opposite. As stated above, *Graham* involved funds that had already been obligated, and which FEMA attempted to cut off post-obligation. No funds were ever obligated in this case. Nor does plaintiff argue any right to receive funds whatsoever.

A final argument is provided by the of the provisions themselves. Facilities eligible for funding include buildings, works, systems, or "an improved and maintained natural feature." The parties agree that eligibility hinges on the last category. This is not an inherently objective criteria; it is hard to imagine how its application could be other than discretionary. The provision expresses the public choice to offer aid in repairing public works, but not in restoring natural conditions. This is a fuzzy line. But this determination, along with decisions regarding which public

works to repair, is part of the discretionary spending of federal dollars.

Therefore, the Court concludes that FEMA's determination that San Bruno's Hillside project was ineligible for Public Assistance funding was discretionary. Accordingly, this Court lacks jurisdiction to review the action, and the motion to dismiss is GRANTED.

## IV. REVIEW UNDER APA

Even if the Court were to find that FEMA's eligibility determination is subject to judicial review under section 10(a) of the APA, FEMA's actions would be upheld. To set aside FEMA's actions in this case would require a finding that FEMA's actions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A).

Here, the Hillside application for funding was reviewed three times: FEMA's initial determination, a first appeal, and a second appeal. San Bruno's second and final appeal was denied because the Hillside did not "meet the definition of an improved and maintained natural feature." [3] Suiter Decl., at 5.

██ In support of its argument that FEMA's determination was arbitrary and capricious, San Bruno cites to *Beno v. Shalala*, 30 F.3d 1057 (9th Cir.1994) for a more detailed standard. That case states that a court should not "infer an agency's reasoning from mere silence" and that the record must show that the agency "considered relevant factors." *Id.* at 1073–1074. San Bruno's citation to this case is puzzling. There is a lengthy administrative record. Furthermore, all evidence presented by San Bruno was considered by

FEMA. In support of their contention that the Hillside was "improved," San Bruno points only to the addition of fill material sometime in 1940 or 1950 for an unknown purpose. Suiter Decl., at 6. But San Bruno admits that this information was considered by FEMA. Plaintiff's cross-motion points and authorities, at 8. To prove that the Hillside was maintained, plaintiff only points to evidence that it undertook an investigation subsequent to a 1995 landslide and determined that no repairs to the Hillside were necessary, despite visible damage. San Bruno points to no other actions with regard to the Hillside that would support a finding that it was maintained. As the record clearly indicates, all of this evidence was considered by FEMA. Suiter Decl., at 1–5. Indeed FEMA assigned a contracted expert to review the claim. Schoenwolf Declaration ¶ 1–9.

In essence, San Bruno does not argue that FEMA was "arbitrary and capricious," it merely argues that FEMA was wrong. The APA does not allow de novo second guessing. Even if the Court were to find jurisdiction, defendant has shown that there is no genuine issue as to a material fact and is entitled to summary judgment as a matter of law.

## CONCLUSION

This court lacks subject matter jurisdiction over plaintiff's claims. FEMA's eligibility determination at issue here is not subject to judicial review, and the case is DISMISSED.

**IT IS SO ORDERED.**

---

**3.** The appeal was also denied because the project did not qualify for emergency assistance, because the Hillside did not pose any

immediate danger. This basis is not contested.