Beatrice B. McWATERS, et al.

v.

FEDERAL EMERGENCY MANAGEMENT AGENCY, et al.

Civil Action No. 05–5488.

United States District Court, E.D. Louisiana.

June 16, 2006.

---

John K. Pierre, Attorney at Law, Baton Rouge, LA, Daniel Lawrence Greenberg, Howard Owen Godnick, Jeffrey Sabin, Michael Samuel Chernis, Sena Hae Won Kim–Reuter, Schulte, Roth & Zabel, New York, NY, John C. Brittain, Lawyers Committee for Civil Rights Under Law, Washington, DC, Steve Ronfeldt, Public Interest Law Project, Oakland, CA, for Beatrice B. McWaters, et al.

Michael Sitcov, Elisabeth Layton, W. Scott Simpson, U.S. Department of Justice Civil Division, Washington, DC, for Federal Emergency Management Agency, et al.

## ORDER AND REASONS

DUVAL, District Judge.

Before the Court is defendants' Motion to Dismiss under Rule 12(b)(1) and Rule 12(b)(6) (Rec.Doc. No. 32), as well as plaintiffs' Motion for Injunction (Rec.Doc. No. 22). Having reviewed the pleadings, memoranda, and having heard oral argument, the Court now **GRANTS** in part and **DENIES** in part the motions as follows.

### Background

Defendants filed the instant Motion to Dismiss under Rule 12(b)(6) on December 5, 2005 in response to plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Rec.Doc. No. 22) and November 28, 2005 Motion for Temporary Restraining Order and Preliminary Injunction (Rec.Doc. No. 26). The Court partially granted plaintiffs' request for a temporary restraining order on December 12, 2005 and amended said Order on January 12, 2006. Pursuant to agreement of the parties, the Court held over defendants' Motion to Dismiss until the hearing on plaintiffs' injunction Motion was held on February 23–24, 2006. Under Federal Rule of Civil Procedure Rule 65 and with consent of the parties, this hearing also served as the trial on the merits, and after post-trial briefing was received, these motions were submitted on March 31, 2006. Because the Court held oral argument on both motions simultaneously, and in the interests of efficient adjudication of the totality of plaintiffs' claims, the following opinion addresses of both defendants' Motion to Dismiss and plaintiffs' Motion for Permanent Injunction.

## A. Plaintiffs' Third Amended Complaint[1] and Incorporated Claims[2]

Plaintiffs commenced this putative class action on November 10, 2005 by filing a Class Action Complaint (Rec.Doc. No. 1) on behalf of thirteen named plaintiffs, all of whose homes were destroyed due to Hurricane Katrina and all of whom have applied for and, as of the date of filing, had failed to receive, any disaster related housing assistance from FEMA. Plaintiffs' subsequently amended their Complaint (See Rec. Doc. Nos. 21, 29, 105). The putative class consists of:

All persons who, as of August 29, 2005, (i) resided in either Louisiana, Mississippi, or Alabama; (ii) resided in areas declared to be Federal Disaster Areas; (iii) were displaced from their pre-disaster primary residences or whose pre-disaster primary residences have been rendered uninhabitable as a result of damage caused by Hurricane Katrina; and (iv) have applied for or will apply, for Temporary Housing Assistance under the Stafford Act, pursuant to 42 U.S.C. § 5174 and the federal regulations promulgated thereunder, and (v) have applications for Temporary Housing Assistance or Continued Rental Assistance that (a) are still pending; (b) were or will be erroneously denied under the Shared Household Rule; (c) have been or will be delayed due to the SBA loan application requirement; (d) were or will be otherwise erroneously

denied; or (e) have been or will be granted, but who have received or will receive Temporary Housing Assistance or Continued Rental Assistance which is not adjusted to reflect the current fair market rental rates for the accommodations.[3,4]

Plaintiffs allege, *inter alia,* seventeen causes of action, including statutory and constitutionally based claims, all stemming from FEMA's response (or lack thereof) in the aftermath of Hurricane Katrina. Plaintiffs seek only declaratory and injunctive relief, including permanent injunctive relief mandating that defendants abide by the requirements of the Stafford Act and the Due Process Clause of the Fifth Amendment by providing assistance to eligible applicants. Plaintiffs aver that they are eligible for assistance under the Stafford Act because they are persons who are "displaced from their pre-disaster primary residences or whose pre-disaster primary residences are rendered uninhabitable as a result of damage caused by a major disaster." 42 U.S.C. § 5174(b). Besides challenging FEMA's authority to unilaterally terminate the Short–Term Lodging Program,[5] the Complaint alleges several violations of the Stafford Act made by FEMA in conjunction with its Katrina relief efforts.

Specifically, plaintiffs challenge the so-called "Shared Household Rule[6]" whereby many disaster victims have been denied assistance from FEMA on the basis that they lived or shared the same address or phone number of another applicant.[7] Ad-

---

1. See Rec. Doc. No. 105.

2. As of the date of this Order.

3. The class deals only with eligible persons and thus does not include persons who have committed fraud in applying for assistance.

4. This class definition is per plaintiffs' Motion for Class Certification (Rec.Doc. No. 80).

5. Also known as the "Hotel–Motel Program" for purposes of this litigation, this claim was

dealt with in the Court's previous Orders dated December 12, 2005 and January 12, 2006 (Rec. Doc. Nos. 38 and 74).

6. Also known as the "separated household rule."

7. Prior to Oral Argument on December 9, 2005, FEMA issued a directive dated September 19, 2005 which stated that it would no longer be enforcing the Shared Household Rule for members of the same economic

ditionally, plaintiffs continue to allege that persons have been denied assistance on the basis that they were told to apply for Small Business Administration (SBA) Loan and that failure to do so would prevent them from receiving any Temporary Housing Assistance, a clear violation § 5174(a)(2) of the Stafford Act.[8] Plaintiffs also bring several lack of "notice claims," arguing, *inter alia*, that many persons receiving the first three-month payment of $2358 in rental assistance [9] under the Temporary Housing provisions of the Stafford Act were either given no notice that such monies were to be spent solely on rent and that failure to do so would prevent the applicant from receiving further assistance from FEMA, or that such notice came too late, and as a result, plaintiffs spent the money on other necessary items, like food and clothing.[10] Plaintiffs also allege that despite FEMA's statements to the contrary, many similarly situated persons are still waiting for an adjudication of their claim for assistance.[11] Plaintiffs argue such a delay is an unlawful violation of both the Stafford Act and the Due Process Clause.

As to the Short–Term Lodging Program, plaintiffs ask that this Court order relief such that no eligible applicant who has applied for benefits whose application has yet to be processed—that is any applicant who has yet to either be denied or receive any temporary housing assistance payment, and thus is listed as "pending"— be evicted from their hotel or motel until fifteen (15) days after that disposition.[12]

Regarding the Shared Household Rule, plaintiffs ask defendants be ordered to no-

---

household that for reasons due to the storm, were now living in separate geographical locations. However, despite this directive, questions regarding FEMA's interpretation of the Shared Household Rule endure, as will be discussed below.

8. This claim was also dealt with to some degree pursuant to the Court's previous Orders dated December 12, 2005 and January 12, 2006. (Rec. Docs. No. 38 and 74).

9. This amount was calculated by FEMA to represent the average cost for a two bedroom apartment nationwide, and it was based on HUD's pre-Katrina Fair Market Rent schedules. See Def.'s Exh. 2; see also Transcript, Vol. 4, 385:23–386:3; 70 Fed.Reg. 57653, 57658–59, Oct. 3, 2005.

10. Prior to Oral Argument on December 9, 2005, FEMA issued a directive dated November 21, 2005 which stated that it would waive the $2358.00 rental restriction requirement provided that those applicants who need further rental assistance sign a declaration stating they did not receive notice regarding these restrictions and instead spent $2358.00 on other essential items. Such applicants would then be re-certified for Continuing Rental Assistance ("CRA") provided all other eligibility requirements were met.

11. As of February 20, 2006, three days before the permanent injunction hearing, one thousand five hundred and ninety-one (1,591) applications for assistance were still listed by FEMA as "pending." See Transcript, Vol. 4, 419:4–423:8; Defs. Trial Exhs. 3–9.

12. The Court's Order dated January 12, 2006 dealt with this claim by extending the deadline for termination to at least February 27, 2006 (March 1, 2006 for those in the Louisiana parishes of Orleans and Jefferson) as well as ordering that every evacuee who applied for Temporary Housing Assistance under § 408 no later than January 30, 2006 "shall have two weeks from the time of receiving a determination of their application for Assistance ... to remain ... before their participation in the Short–Term Lodging program is terminated." See Modified Order, Rec. Doc. No. 74. Despite the fact that the Feb. 27, 2006 date has long since passed, the Court notes that the portion of the Court's order dealing with two weeks notice prior to eviction remains in effect such that those persons, if any, who are still residing under the Section 403 Short–Term Lodging program and awaiting determination of their status are still entitled to this two-week notice period.

tify all applicants whose cases are "pending" or have been denied based upon (a) the Shared Household Rule or (b) duplicate information on their application with that of another applicant, that they are eligible to establish a separate household in a different geographic location after the disaster. Plaintiffs request this notice be provided by the use of, at a minimum, public service announcements, television, radio, and newspaper ads.[13]

With regards to the SBA Loan application requirement issue, plaintiffs request an injunction and order requiring defendants to notify, in same manner as above, those evacuees whose applications are "pending" due to a faulty or unnecessary SBA loan application, or those evacuees who may not have pursued assistance because they believed or were told that an applicant must apply for a SBA loan in order to obtain temporary housing assistance, that no such requirement exists and the applicant is eligible for assistance.

As to those who received the initial $2358 rental payment in Temporary Housing Assistance but, due to a lack of notice as to its restrictions, spent it on necessary sundries instead of rent, plaintiffs also request greater dissemination of FEMA's waiver of this restriction through methods similar to those described above so that if an applicant used the money on something other than housing rent they are still eligible for Continued Rental Assistance.

In their Third Amended Complaint, plaintiffs also allege claims under the Stafford Act and the Due Process Clause for Fair Market Rent ("FMR"), based on FEMA's alleged failure to provide notice of Increased Temporary Housing Assistance. See Rec. Doc. No. 105, ¶¶ 189–203.

In support, plaintiffs point to 42 U.S.C. 5174(c)(1)(A)(ii), which states "the amount of assistance ... shall be based on the fair market rent for the accommodation provided plus the cost of any transportation, utility hookups, or unit installation not provided directly by the President." *Id.* Plaintiffs argue that under this mandatory language FEMA must not only provide notice that such rental assistance is available, but also that the amount of such assistance must equal the fair market rent for the areas in which recipients are living. Also implicated is 44 C.F.R. § 206.117(b)(1)(i)(B) which states, "FEMA will base the rental assistance on the Department of Housing and Urban Development [HUD]'s current fair market rates for existing rental units. FEMA will further base the applicable rate on the household's bedroom requirement and the location of the rental unit." *Id.* Plaintiffs aver that while FEMA has no discretion under the Stafford Act to refuse to provide fair market rental assistance to eligible persons, FEMA does have discretion as to the determination of that amount, such that FEMA is not bound to use the HUD calculations. Consequently, if FEMA's use of the HUD rates are found to be lacking, i.e. are of an inadequate amount for the location in which recipients live, then per the mandate of the Stafford Act, FEMA must adjust those rates regardless of whether they deviate from the HUD standard. In support plaintiffs presented evidence that the $2358 payment provided by FEMA as rental assistance, which was designed to cover the first three-months of rent on a two-bedroom apartment, was often inadequate in many of the major metropolitan areas to which evacuees were sent. Addi-

---

13. At the hearing held February 23–24, 2006 evidence was taken with regards to FEMA's efforts towards publication and notice. Such evidence presented by FEMA consisted of, *inter alia*, press releases, radio recordings, mailings, and hotline phone numbers. See Admin. Record, Vol. 3, Tab 91, AR00560, 00562, 00564; Transcript, Vol. 4 356:1–358:14.

tionally, plaintiffs argue that FEMA keeps changing what is required for continued rental assistance re-certification; that is to say FEMA has failed to adequately inform applicants entitled to continued rental assistance what the precise requirements are in order to continue to receive such assistance, and the exact amount of assistance, based on the fair market rental rate, of that assistance. Plaintiffs argue all of these actions not only create great uncertainty for the applicants, but violate both the Stafford Act and the Due Process Clause.

Finally, plaintiffs bring claims under the Administrative Procedures Act (APA), arguing that FEMA's delays and denials of housing assistance violate 5 U.S.C. §§ 706(1), (2)(A), and 706(2)(C). Plaintiffs also allege violations of agency rulemaking requirements under 5 U.S.C. § 553 and 42 U.S.C. § 5165c. Plaintiffs argue that FEMA's extensive delays in providing assistance constitute unreasonable delays and action unlawfully withheld and that FEMA's denial of assistance based upon their Shared Household Rule and SBA loan application requirement constitute unlawfully withheld agency action as well, all in violation of 5 U.S.C. § 706(1). Furthermore, per 5 U.S.C. § 706(2)(A) FEMA may not take agency action which is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A). However, FEMA's extensive delays in providing THA and their denials of THA based upon the Shared Household Rule and the SBA loan application requirement and their inconsistent application of these rules are all in violation of this standard and/or constitute action in excess of FEMA's statutory authority and in violation of 5 U.S.C. § 706(2)(C). See Rec. Doc. No. 105, ¶¶ 277–78. Finally, FEMA is adopting and implementing polices, rules, and regulations including, *inter alia*, their termination of hotel/motel funding, which violate

the rulemaking requirements under 5 U.S.C. § 553 and 42 U.S.C. § 5165c. See Rec. Doc. No. 105, ¶ 279. Relying on *City of Kansas City, Mo. v. HUD*, 923 F.2d 188, 194 (D.C.Cir.1991), plaintiffs specifically argue that FEMA's decision to set assistance at a level based on a national average of HUD-compiled FMRs was arbitrary and capricious due to FEMA's own recognition that the amount of assistance provided to evacuees under such a formula was largely inadequate to meet their housing needs. See Pltf.'s Post–Hearing Brief, Rec. Doc. No. 125, p. 8.

## B. Defendant's Arguments under Rules 12(b)(6) and 12(c)

In their motion to dismiss defendants allege that the Court lacks subject matter jurisdiction to decide any of plaintiffs' claims, because no waiver of sovereign immunity applies to FEMA's actions and other claims of plaintiffs have been satisfied and thus are now moot. As to the other claims, if any which remain, FEMA argues plaintiffs have failed to state a claim upon which relief can be granted in that there is no legal basis to require FEMA to process requests for assistance within a certain period of time, or to compel FEMA to continue the hotel/motel program, and there have been no violations of plaintiffs due process rights.

### 1. Sovereign Immunity

FEMA argues that the United States as sovereign "is immune from suit save as it consents to be sued," and without such consent, a district court lacks subject matter jurisdiction over claims against it. *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). FEMA argues that the waiver in the APA of sovereign immunity relied on by plaintiffs does not apply when another statute,

in this case, 42 U.S.C. § 5148,[14] precludes judicial review. The APA specifically states that it does not provide review of agency action to the extent that "statutes preclude judicial review" or "agency action is *committed to agency discretion* by law." 5 U.S.C. § 701(a)(1), (2) (emphasis added). FEMA states that because the Stafford Act provides that the government "shall not be liable" for any claim based on a federal agency's or employee's "exercise or performance of or the failure to exercise or perform a discretionary function or duty," 42 U.S.C. § 5148, the APA does not apply. All of the functions and duties involved in this case are clearly "discretionary functions" for purposes of the Stafford Act's non-liability provision and the APA, including the decision to terminate the provision of any particular type of assistance, whether or not such termination might unintentionally affect one class of persons more than others. Thus this Court should dismiss all of plaintiffs' claims.

In arguing that FEMA's actions are discretionary and thus FEMA is exempt from liability, FEMA relies on the a two-prong test developed by the Supreme Court in *Berkovitz v. United States,* 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988) which applied the discretionary function exception of the Federal Tort Claims Act. According to *Berkovitz,* the first prong is satisfied when a choice or judgment is involved in the performance of the function, and that choice or judgment is not tempered by a statute, regulation or policy which mandates a particular course of action. *Id.* at 536–37, 108 S.Ct. 1954. If this condition is met, a court then proceeds to the second prong, which provides that the discretionary function exception will apply if the activity in question is grounded in social, economic or political activity. *See Sunrise Village Mobile Home Park, L.C. v. United States,* 42 Fed.Cl. 392, 399 (1998)

(citing *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)); *City of San Bruno v. FEMA,* 181 F.Supp.2d 1010, 1014–15 (N.D.Cal. 2001). In *Sunrise Village,* the court found it "unquestionable that the disaster relief provided under the Stafford Act is grounded in social, economic, and political policy." *Id.* Furthermore, it has been held to be "undisputed that FEMA ultimately has discretion regarding which products to fund [as] the allocation of limited resources among victims of a disaster is clearly a matter involving 'policy judgment.'" *City of San Bruno,* 181 F.Supp.2d at 1015.

FEMA argues that plaintiffs' claims herein also fall within the two-pronged test for discretionary agency action. First, the actions challenged involve some degree of judgment "not tempered by a statute, regulation, or policy which mandates a particular course of action," *Sunrise Village,* 42 Fed.Cl. at 399, because the Stafford Act repeatedly uses the word "may" in describing FEMA's duties. Further, the actions challenged are matters of "policy judgment"—if the extent to which FEMA supervises a contractor is grounded in "social, economic, and political policy" as was the case in *San Bruno,* then certainly the same should be said for FEMA's application of the Stafford Act to a given disaster, the pace of application processing, the extent of notice, and the timing and the types of assistance FEMA provides. FEMA points out that plaintiffs have cited no case which holds that a disaster declaration by the President eliminates FEMA's discretion regarding provision of assistance.

## 2. Mootness

FEMA further argues that even if sovereign immunity is lacking or has been waived, the Court should still dismiss

---

**14.** Also referred to herein as the Stafford    Act's "non-liability" provision.

those of plaintiffs' claims which have become moot. Specifically, FEMA's "extremely substantial progress"[15] in resolving applications for assistance, the pace of processing of applications, FEMA's waiver of the Shared Household Rule, and of FEMA's waiver of the requirement to use the first payment of housing assistance only for housing expenses, demonstrate that the vast majority of plaintiffs' claims have been satisfied. Thus, FEMA argues, no additional action is needed by the Court and plaintiffs' claims should be dismissed for mootness.

### 3. Lack of Merit

Finally, FEMA argues that all of the claims regarding notice should be dismissed not only because FEMA has made substantial effort to notify evacuees of FEMA's policies, but also because plaintiffs have demonstrated no legal basis for compelling FEMA to decide applications for disaster assistance within a certain time or to provide any particular type of notice. FEMA reasserts that the Stafford Act immunizes them from liability over any claim regarding notice. Secondly, FEMA asserts that there is no constitutionally protected "property interest" in federal disaster assistance, so the notice provisions of the Due Process Clause are inapplicable, and all of plaintiffs' claims which implicate due process violations must also be dismissed.

FEMA particularly objects to plaintiffs' claims regarding the issue of calculation of "Fair Market Rents" for the provision of continued rental assistance. FEMA argues that plaintiffs failed to properly plead such a claim in their complaint, and even if properly pled, FEMA argues that its reliance on the market rates collected by HUD is proper and well within agency

discretion. FEMA further argues that under its regulations, FEMA has the discretion to revisit HUD's FMR determinations and to increase them if necessary, which it has done for Louisiana post-Katrina. See Transcript, Vol. 3, 330:11–25. Furthermore, FEMA argues that because HUD's rates are published in the federal register, plaintiffs' lack of notice claim as to the amount of assistance provided should be dismissed. Finally, FEMA points out that in order to reduce uncertainty as to the amount of continued rental assistance available to eligible applicants, as well as to prevent applicants from being unable to meet their rental obligation due dates, FEMA is not requiring applicants to completely exhaust the funds provided before re-applying for the next tranche of assistance. Rather FEMA is "setting a timer in NEMIS so that a letter goes out to [recipients] on day [forty] reminding them to please provide us all ... documentation within the next ten days so that we are certain they don't have that gap [between exhaustion of one tranche of rental assistance and receipt of the next tranche of rental assistance]." See Transcript, Vol. 4, 470:15–18.

### Legal Standard

The Fifth Circuit holds that "[i]njunctive relief is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985). The standard for a permanent injunction is "essentially the same" as for a preliminary injunction, in that the plaintiff must establish each of the following four elements: (1) actual success on the merits; (2) a substantial threat that failure to grant the

---

**15.** This language comes from the Court's December 12, 2005 Order, see Rec. Doc. No. 38, p. 18.

injunction will result in irreparable injury; (3) that the threatened injury outweighs any damage that the injunction may cause the defendants; and (4) that the injunction will not impair the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.,* 210 F.3d 439, 442 (5th Cir.2000); *Millennium Restaurants Group, Inc. v. City of Dallas,* 191 F.Supp.2d 802, 809 (N.D.Tex. 2002); *see also Valley v. Rapides Parish School Board,* 118 F.3d 1047, 1051 (5th Cir.1997); *Sierra Club v. FDIC,* 992 F.2d 545 (5th Cir.1993); *Canal Authority of Florida v. Callaway,* 489 F.2d 567, 572 (5th Cir.1974). The party seeking the preliminary injunction must "clearly carry the burden of persuasion on all four … prerequisites." *Cherokee Pump & Equipment, Inc. v. Aurora Pump,* 38 F.3d 246, 249 (5th Cir.1994) (citing *Mississippi Power & Light v. United Gas Pipe Line Co.,* 760 F.2d 618 (5th Cir.1985)). The difference between the standard for a permanent injunction and the standard for a preliminary injunction is that in the former the court determines the plaintiff's success on the merits rather than the plaintiff's likelihood of success on the merits. *See Millennium Restaurants,* 191 F.Supp.2d at 809.

A motion to dismiss an action for failure to state a claim " 'admits the facts alleged in the complaint, but challenges plaintiff's right to relief based upon those facts.' " *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995) (quoting *Ward v. Hudnell,* 366 F.2d 247, 249 (5th Cir.1966)). "[F]or purposes of the motion to dismiss, (1) the complaint is construed in the light most favorable to the plaintiff, (2) its allegations are taken as true, and (3) all reasonable inferences that can be drawn from the pleadings are drawn in favor of the pleader." 5A Wright & Miller, Federal Practice & Procedure § 1357, at 417 (2004 West). "The district court may not dismiss a complaint under rule 12(b)(6) 'unless it appears beyond a doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief.' " *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "In order to avoid dismissal for failure to state a claim, however, a plaintiff must plead specific facts, not mere conclusory allegations." *Id.; see also Kaiser Aluminum & Chemical Sales v. Avondale Shipyards,* 677 F.2d 1045 (5th Cir.1982). That being said, it is well established that courts do not have to accept every allegation in the complaint as true in considering its sufficiency. 5A Wright & Miller, Federal Practice & Procedure § 1357, at 548–549; *see also Associated Builders, Inc. v. Alabama Power Co.,* 505 F.2d 97, 100 (5th Cir.1974) (conclusory allegations and unwarranted deductions of fact are not admitted as true); *see also Tuchman v. DSC Communications Corp.,* 14 F.3d 1061, 1067 (5th Cir. 1994) (accepting as true, for the purposes of a Rule 12(b)(6) dismissal, well-pleaded factual allegations, but rejecting "conclusory allegations or unwarranted deductions of fact."). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6). *See Home Builders Ass'n of Miss., Inc. v. City of Madison,* 143 F.3d 1006, 1010 (5th Cir.1998).

*Analysis*

**A. Sovereign Immunity**

■ As stated in the Court's previous Order dated December 12, 2005, FEMA's primary defense remains that of sovereign immunity. FEMA argues that because it is a branch of the Department of Homeland Security, itself an executive department of the United States, then as a component of that department, plaintiffs' action is essentially one against the United States. Thus plaintiffs' complaint is subject to a defense of sovereign immuni-

ty. *See Hawaii v. Gordon,* 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963). Sovereign immunity "applies alike to causes of action arising under acts of Congress, and to those arising from some violation of rights conferred upon the citizen by the Constitution." *Lynch v. United States,* 292 U.S. 571, 582, 54 S.Ct. 840, 78 L.Ed. 1434 (1934). Sovereign immunity also bars actions for injunctive relief. *See United Tribe of Shawnee Indians v. United States,* 253 F.3d 543, 547 (10th Cir.2001) ("absent express provision, a court has no jurisdiction to either restrain the government from acting or compel it to act").

It is FEMA's position that because there is no applicable waiver of sovereign immunity as to plaintiffs' claims, this Court lacks subject matter jurisdiction and should thus dismiss all of plaintiffs' claims. FEMA argues that plaintiffs bear the burden of establishing that a waiver of sovereign immunity encompasses their claims, *see Lundeen v. Mineta,* 291 F.3d 300, 304 (5th Cir.2002), and plaintiffs cannot meet this burden. Furthermore, all of the actions complained of are discretionary and thus the APA's waiver of sovereign immunity does not apply. The acts and/or omissions alleged by plaintiffs are all discretionary in nature and therefore immune from judicial review. Essentially defen-

dants argue that under the aegis of sovereign immunity, FEMA may commit unconstitutional acts and not be subject to any judicial review.[16]

As stated in the Court's December 12, 2005 Order, the statutory authority for FEMA's argument is set forth in § 5148 of the Stafford Act which provides, "the Federal Government shall not be liable for any claim based upon the exercise of performance of or the failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Federal Government in carrying out the provisions of this chapter." 42 U.S.C. § 5148. In support FEMA cites, *inter alia, Lynch v. United States,* 292 U.S. 571, 582, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), *Sunrise Village Mobile Home Park, L.C. v. United States,* 42 Fed.Cl. 392, 399 (1998) (citing *Berkovitz v. United States,* 486 U.S. 531, 536–37, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988)),[17] *City of San Bruno v. FEMA,* 181 F.Supp.2d 1010, 1014–15 (N.D.Cal.2001) and *Ornellas v. United States,* 2 Cl.Ct. 378, 379–80 (1983).

As committed as defendants may remain in their position that FEMA is virtually totally immune from judicial review, this Court, reaffirming its December 12, 2005 holding on this issue, finds that FEMA is indeed, *not* immune from all judicial review.[18] Despite defendants' continued ar-

---

**16.** This position has been maintained by the government throughout the course of these proceedings, see Rec. Doc. No. 3 8, p. 11. Of course, FEMA adamantly denies any unconstitutional action or any unlawful acts.

**17.** In *Berkovitz,* the Supreme Court, examining the discretionary function exception in relation to the duties of a federal agency and its employees in the context of the Federal Tort Claims Act ("FTCA"), held that the discretionary function exception "will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow. In this event, the employee has no rightful option but to adhere

to the directive." *Berkovitz,* 486 U.S. at 536, 108 S.Ct. 1954. The Court further stated that although the discretionary function exception insulates the government from actions which involve the permissible exercise of policy judgment, if an agency fails to act in accordance with a specific, mandatory directive, the discretionary function exception does not apply. *Id.* at 544, 108 S.Ct. 1954.

**18.** See Rec. Doc. 38, p. 12 ("This Court has found only a handful of cases discussing the discretionary function exception under the Stafford Act, and these cases have consistently used the 'discretionary function' exception analysis as set out in *Berkovitz. See United*

guments to the contrary, further advanced by FEMA at the February 23, 2006 permanent injunction hearing, the Court's understanding remains that FEMA is not immune from all judicial review, but rather only from review of those acts that are discretionary in nature. Section 5148 of the Stafford Act and other door-closing statutes "do not, unless Congress expressly provides, close the door to constitutional claims, provided that the claim is colorable and the claiming is seeking only a new hearing or other process rather than a direct award of money." *Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435, 1439 (7th Cir.1996). Notably FEMA has still cited *no* factually analogous authority to demonstrate that Congress intended FEMA to be completely immune from judicial review for mandatory acts.[19],[20] "Where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear ... in part to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988) (citations omitted). The Stafford Act's "non-liability provision" states that FEMA will face no liability for discretionary actions; it does *not* say FEMA will face no liability for constitutional violations. The Court finds that Section 5148 does not constitute the kind of express waiver contemplated by the Supreme Court in *Webster* or an earlier, seminal case, *Johnson v. Robison,* 415 U.S. 361, 366–67, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974). First, the statute itself contains no explicit language barring judicial consideration of constitutional challenges. *See Marozsan v. United States,* 852 F.2d 1469, 1474 (7th Cir.1988) (en banc). Secondly, as in *Johnson,* the Court agrees that FEMA is not competent to decide constitu-

*Power Association v. FEMA,* 2000 WL 33339635 *1, *2 (D.N.D. Sept.13, 2000); *see also Dureiko v. United States,* 209 F.3d 1345 (Fed.Cir.2000); *Graham v. FEMA,* 149 F.3d 997 (9th Cir.1998); *Rosas v. Brock,* 826 F.2d 1004 (11th Cir.1987); *Torres v. Government of the United States,* 979 F.Supp. 1054 (D.Vi. 1997); *Lockett v. FEMA,* 836 F.Supp. 847 (S.D.Fla.1993). Closely parallel is the waiver of sovereign immunity found in the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* Section 701 of the APA excludes judicial review of agency action in two situations: (1) where a statute precludes review; and/or (2) where agency action is committed to agency discretion by law.").

19. 42 U.S.C. § 5121 states:
§ 5121. Congressional findings and declaration
(a) The Congress hereby finds and declares that—
(1) because disasters often cause loss of life, human suffering, loss of income, and property loss and damage; and
(2) because disasters often disrupt the normal functioning of governments and communities, and adversely affect individuals and families with great severity;

special measures, designed to assist the efforts of the affected States in expediting the rendering of aid, assistance, and emergency services, and the reconstruction and rehabilitation of devastated areas, are necessary.
(b) It is the intent of the Congress, by this chapter, to provide an *orderly and continuing means of assistance by the Federal Government* to State and local governments in carrying out their responsibilities *to alleviate the suffering and damage which result from such disasters* ... 42 U.S.C. § 5121.

20. *See also, Rosas v. Brock,* 826 F.2d 1004, 1008 (11th Cir.1987) (where the Court, in examining a precursor to the Stafford Act, specifically the Disaster Relief Act of 1974, opined that "Congress had no such intention [of precluding judicial review of unconstitutional acts] when it enacted 42 U.S.C.A. Sec. 5148. That statute prohibits judicial review of discretionary actions. There is no reason to believe that Congress ever intended to commit to an agency's discretion the question of whether ... to act constitutionally. The law ... is that adherence to constitutional guidelines is not discretionary; it is mandatory.").

tional questions as to the validity of its regulations, policies, and procedures. *Id.* Finally, so that the Stafford Act's non-liability provision remains constitutional, the Court will construe it in such away as to leave open review of constitutional questions. As stated by the Seventh Circuit in *Marozsan* when it interpreted the Supreme Court's holding in *Johnson,* ("the structure of our constitutional form of government dictate[s] that we not read § 211(a) to preclude all judicial review of a veteran's serious constitutional claims [but rather,] to preserve its constitutionality, we *must* construe § 211(a) to allow substantial constitutional challenges to the veterans' benefits statutes and regulations, as well as to the procedures established by the V.A. to administer them.") (emphasis added).

Finally, as to defendants' reliance on *Lynch v. United States,* 292 U.S. 571, 582, 54 S.Ct. 840, 78 L.Ed. 1434 (1934), this Court is in agreement with Judges Edwards and Wright of the D.C. Circuit who, in writing for the majority, stated, "thus, when the smoke clears in *Lynch,* the sovereign immunity claim *fails* because to hold otherwise would be to create the possibility that Congress could act unconstitutionally and then attempt to shield its action from review by virtue of sovereign immunity." *Bartlett v. Bowen,* 816 F.2d 695, 708 (D.C.Cir.1987) (emphasis added).

Consequently this Court finds that its authority to review FEMA's actions clearly exists as to any actions that are mandated by statute, and more importantly, any actions that may rise to the level of a constitutional violation by the agency.

### B. Property Interest

█ Plaintiffs bring constitutional claims under the Due Process Clause. Fundamental to the Court's inquiry as to whether there has been a constitutional violation under the Due Process Clause is whether, as a result of FEMA's provision of assistance pursuant to the Stafford Act, a property interest is created. In order to have a property interest in a government benefit, a person "must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.'" *Blackburn v. City of Marshall,* 42 F.3d 925, 936 (5th Cir.1995) (citing *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)); *see also Washington Legal Clinic for the Homeless v. Barry,* 107 F.3d 32, 36. "Property interests are not created by the Constitution; rather they stem from independent sources," *Blackburn,* 42 F.3d at 937, such as state and federal statutes. *Cf. Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Property interests are created and defined "by existing rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

"[G]overnment action comports with substantive due process if the action is rationally related to a legitimate governmental interest." *FM Prop. Operating Co. v. City of Austin,* 93 F.3d 167, 174 (5th Cir.1996). The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property, and when these protected interests are implicated, "the right to some kind of prior hearing is paramount,"[21]

---

**21.** A hearing is necessary "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91

S.Ct. 780, 28 L.Ed.2d 113 (1971); *see also Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("It is fundamental that except in emergency situations ... due process requires that when a State seeks

*Board of Regents v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), as "due process entitles an individual to notice and some form of hearing before state action may finally deprive [one] of a property interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

"Due process is a flexible concept that varies with the particular situation." *Cryder v. Oxendine,* 24 F.3d 175, 177 (11th Cir.1994). "A violation of substantive due process, for example, occurs only when the government deprives someone of liberty or property; or, to use the current jargon, only when the government works a deprivation of a constitutionally protected interest." *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir.1988) (internal quotation marks and citations omitted). "Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights." *Simi Investment Co. v. Harris County,* 236 F.3d 240, 249. "Property interests protected by procedural due process extend well beyond actual ownership of real estate, chattels or money," *Roth,* 408 U.S. at 572, 92 S.Ct. 2701, as "it is the purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives." *Id.* at 577, 92 S.Ct. 2701. Thus, to determine whether due process requirements apply a court must consider the nature of the interest at stake, specifically whether the interest implicated is within the Due Process Clause's protection. *Id.* at 571, 92 S.Ct. 2701.

Plaintiffs claim that FEMA has acted outside its constitutional authority by violating their rights to due process, and plaintiffs base their claim on the Stafford Act. Plaintiffs' argue their suit is not a suit

to terminate (a protected) interest ..., it must afford 'notice and opportunity for hearing

to recover benefits; rather it is a suit "to enforce lawful conduct" by FEMA. *Starnes v. Schweiker,* 715 F.2d 134, 141 (4th Cir.1983). Notably, the Government has made no alternative argument that if indeed there *is* a protectable property interest in disaster assistance, then FEMA, in providing such assistance, has not violated the Constitution. FEMA argues only that no property interest in the provision of assistance exists, and thus, all of plaintiffs' due process claims must fail. Thus the Court is left with a three-step process. First, the Court must determine whether it has jurisdiction and plaintiffs's due process claims are reviewable. If so, the Court must then determine whether any protectable property interest exists. *See Spuler v. Pickar,* 958 F.2d 103, 106 (5th Cir.1992) (citing *Baker v. McCollan,* 443 U.S. 137, 146–47, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). Finally, if such interests are found, the Court must then weigh whether plaintiffs have demonstrated that a deprivation has occurred, namely whether FEMA has acted unconstitutionally regarding these interests, or whether any denial or deprivation by FEMA is rationally related to a legitimate governmental interest. *See, e.g., Simi,* 236 F.3d at 250–51; *see also FM Prop.,* 93 F.3d at 174. "The question is only whether a rational relationship exists between the [policy] and a conceivable legitimate objective. If the question is at least debatable, there is no substantive due process violation." *FM Prop.,* 93 F.3d at 174 (alteration in original) (citations omitted). As to the first prong, the Court finds plaintiffs' due process claims to be reviewable, as plaintiffs are asking the Court to essentially review FEMA's *methods,* and *not* its decisions as to individual cases. *See, e.g. Marozsan,* 852 F.2d at 1472.

...' ").

As to the second step, to determine whether a particular statute creates a constitutionally protected property interest, the Court must determine whether the Stafford Act or its implementing regulations place "substantive limitations on official discretion." *Washington Legal Clinic*, 107 F.3d 32, 36 *(citing Olim v. Wakinekona*, 461 U.S. 238, 249, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983); *Tarpeh–Doe v. United States*, 904 F.2d 719, 722 (D.C.Cir.1990)). Specifically, "statutes or regulations limit official discretion if they contain 'explicitly mandatory language,' *i.e.*, specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow." *Id. (citing Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted)). As discussed below, the Court finds that under certain circumstances there may be a property interest created by the Stafford Act and protectable under the Due Process Clause.

## C.  Plaintiffs' Causes of Action

As a means to address whether a property interest exists and whether any violations have occurred, the Court will discuss the claims brought by plaintiffs seriatim.

### 1.  Failure to Provide Temporary Housing Assistance ("THA"): Stafford Act Violation[22]

The Court finds that pursuant to the Stafford Act, FEMA's decidedly slow provision of THA is not an actionable as a violation of the Stafford Act. Pursuant to evidence submitted by FEMA, the Court finds that FEMA has indeed made sufficient progress in the processing of applica-

tions. Furthermore, the Court finds that it has neither the expertise nor statutory authority to confect a timetable for the processing and resolution of applications for assistance which is the suggested remedy requested by plaintiffs. Accordingly, this claim must be dismissed.

### 2.  Failure to Provide THA: Constitutional Due Process Violation

In *Goldberg v. Kelly*, 397 U.S. 254, 262, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), the Supreme Court held that because persons meeting state AFDC eligibility criteria *automatically* qualified for benefits, those individuals deemed eligible per the standards had a protected property interest in the receipt of welfare benefits. However, where final determination of *which* eligible individuals receive benefits was left to the "unfettered discretion" of administrators, no constitutionally protected property interest existed. *See Roth*, 408 U.S. at 567, 92 S.Ct. 2701; *Washington Legal Clinic*, 107 F.3d at 36, 38.

Applying these principles in order to answer the question as to whether the Stafford Act creates a constitutionally protected entitlement to disaster assistance, the Court must determine whether, under current regulations, hurricane disaster victims meeting the statutory qualifications for assistance are indeed automatically entitled to receive it. If so, as in *Goldberg*, eligible persons would have a constitutionally protected property interest in assistance. 397 U.S. at 262, 90 S.Ct. 1011. However, if FEMA has discretion to choose whom to assist from among otherwise eligible persons, then no constitutionally protected interest in disaster assistance exists. *See Washington Le-*

---

**22.** Pursuant to statute and the applicable regulations, for purposes of this opinion, assistance means, *inter alia*, "Temporary Housing Assistance" and "Continued Rental Assistance." Pursuant to statute, Temporary Housing Assistance includes both financial as-

sistance, such as rental assistance (or, in some cases, "continued rental assistance") and/or direct assistance, such as trailers or other temporary housing units. See 42 U.S.C. § 5174(c); 44 C.F.R. § 206.117(b)(1)(i) and (ii).

*gal Clinic,* 107 F.3d at 36; *see also Eidson v. Pierce,* 745 F.2d 453, 462 (7th Cir. 1984).

In *Washington Legal Clinic* the D.C. Circuit Court of Appeals held that although certain objective eligibility criteria was used by the District of Columbia when approving homeless families for an emergency shelter program, the expectation of such assistance was insufficient to create a property interest. *See Washington Legal Clinic,* 107 F.3d at 32. Noting that the city had limited resources and as such, never had provided enough shelter to meet the emergency sheltering needs of all eligible homeless persons, the court held that because the allocation of the limited shelter available to eligible families was left to the unfettered discretion of city administrators and nothing in the governing law prevented allocation of available space in such away that not all eligible families received shelter, no property interest was created. *Id.*

However, unlike the municipal ordinance at issue in *Washington Legal Clinic,* FEMA's discretion in providing assistance under the Stafford Act is tempered in many important ways. Firstly, by FEMA's own admission, the agency has *no* discretion regarding provision of Temporary Housing Assistance to eligible persons and families. See Transcript, Vol. 4 p. 434, Testimony of Donna Dannels, Acting Deputy Director of the Recovery Division, and Chief of National Processing Service Center Operations, FEMA ("If they are eligible, we will pay."). Additionally, while the ultimate resources allocated to FEMA from the federal government and Congress may be finite in monetary amount, its provision of those resources *must* be done so equitably under the law and in accordance with regulations designed to "insur[e] that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status." See 42 U.S.C. § 5151(a).[23] The non-discrimination provision of the Stafford Act ensures equal treatment and division of resources. *Id.* Furthermore, while Washington, D.C.'s "Emergency Shelter" program had specific language denying the creation of any entitlement and granting city administrators unfettered discretion to run the program,[24] no such language exists here. Indeed, based on statute and testimony provided by FEMA's own representatives, a person or family is deemed eligible for temporary housing assistance solely on the basis of being a person or member of a household who is "displaced from their predisaster primary residence[ ] or whose predisaster primary residence[ ] are rendered uninhabitable as a result of damage

---

**23.** Section 5151(a) of the Stafford Act provides,

(a) The President *shall* issue, and may alter and amend, such regulations as may be necessary for the guidance of personnel carrying out Federal assistance functions at the site of a major disaster or emergency. Such regulations *shall* include provisions for insuring that the distribution of supplies, the processing of applications, and other relief and assistance activities shall be accomplished in an equitable and impartial manner, without discrimination on the grounds of race, color, religion, nationality,

sex, age, or economic status. 42 U.S.C. § 5151(a) (emphasis added).

**24.** *See Washington Legal Clinic,* 107 F.3d at 32 ("After several lawsuits against the city for failing properly to administer its ... programs ... the City Council ... moved to 'limit specifically and define clearly the obligation of the District of Columbia' [under the Acts] ... [thus] the City Council amended both acts to provide that nothing in either "shall be construed to create an entitlement in any homeless person or family to overnight shelter" ") (citations omitted).

caused by a major disaster." 42 U.S.C. § 5174(b)(1),[25] see also Transcript, Vol. 4, 432:16–433:10.

In *Washington Legal Clinic* the court agreed that "if *all* families meeting these [objective] criteria *received* shelter, we would agree with the district court ... that applicants have a constitutionally protected entitlement to shelter." 107 F.3d at 36 (emphasis added). Here FEMA admits that all persons meeting the impartial eligibility criteria above are entitled to assistance, and all of them will receive it. In fact, most cases are *automatically* determined eligible or ineligible by the NEMIS computer system, requiring no human intervention or approval such that eligible applicants essentially "automatically qualify" for assistance and are then automatically paid via either computer generated check or an electronic funds transfer. See n. 25, *supra*. Furthermore, unlike *Washington Legal Clinic*,[26] the parties in this case do not agree FEMA has insufficient resources to provide assistance to all eligible applicants, and indeed FEMA itself makes no such claim. See Transcript, Vol. 2, 95: 16–19.[27] As such the Court finds

that the mandatory and non-discretionary policies and regulations under the Stafford Act which require FEMA to automatically provide assistance to *all* applicants deemed *eligible* creates a reasonable expectation of the benefit of federal disaster assistance in these applicants, and this expectation rises to the level of a property interest protectable under the Due Process Clause. The Court finds that eligible applicants have the "legitimate claim of entitlement" necessary to create a constitutionally protected property right. *Roth,* 408 U.S. at 577, 92 S.Ct. 2701. Accordingly, the Court finds that under the Constitution, by virtue of the automatic, non-discretionary nature of FEMA's provision of assistance as found in both practice and the Stafford Act and its implementing regulations, persons who qualify as eligible do have a constitutionally protected property interest in receipt of housing assistance.

■ However, despite FEMA's lack of discretion in providing Temporary Housing Assistance, as well as the seemingly interminable delays in provision of such assistance, and despite the fact that a protected interest under the Due Process

---

25. The full text of 42 U.S.C. § 5174(b)(1) reads:

> "The President may provide financial or other assistance under this section to individuals and households to response to the disaster-related housing needs of individuals and households who are displaced from their predisaster primary residences or whose predisaster primary residences are rendered uninhabitable as a result of damage caused by a major disaster."

Notably, despite the use of the word "may," testimony taken at the preliminary injunction hearing revealed that it is FEMA's own interpretation of its governing regulations and FEMA policy that while FEMA may have discretion as to whether to engage in the provision of certain *types* of assistance (such as a direct cash payment versus a subsidized hotel room or a temporary trailer), once an applicant is deemed eligible for assistance, assistance of some sort *will be* provided, in most

cases *automatically* via the NEMIS computer program system. See Transcript, Vol. 3, 318:1–326:15 (testimony that over 95% of applications for assistance are automatically resolved via the NEMIS computer system and paid out vial either computer generated check or direct deposit, thus requiring no human interaction whatsoever).

26. *See* 107 F.3d at 36 ("All parties agree and the City Council has recognized that the District has insufficient resources to provide shelter from all eligible families.").

27. Examination of Donna Dannels:

> Q: Would you deny someone money they were entitled to because your agency didn't have sufficient funds to pay it?
> A: No. There were sufficient funds in the supplemental appropriation by Congress to pay housing assistance.

Clause in receiving such assistance exists in recipients, based on the evidence presented by the parties at the permanent injunction hearing, the Court finds that plaintiffs have failed to prove the third prong of the inquiry, namely a deprivation of that right. Evidence adduced throughout the course of this litigation reveals that FEMA was definitely unprepared to quickly and efficiently deal with the multitude of applications for temporary housing assistance stemming from Hurricane Katrina. However, despite FEMA's lack of preparation, and regardless of the property interest implicated, having heard all of the evidence presented, the Court must find that the delay faced by FEMA in processing the voluminous number [28] of Katrina-related housing applications was inevitable due to the sheer practicalities of the circumstances wrought by the aftermath of the storm.[29] Under the low-threshold rational basis test, *see Simi*, 236 F.3d at 251, and given the number of displaced needy persons, both eligible and ineligible, as a *practical* matter the Court cannot hold that FEMA's delay in the provision of these services equates to a denial or deprivation of plaintiffs' property rights. FEMA did and *is* taking action, albeit at a rather excruciatingly slow place.[30] Accordingly, because the Court finds no actionable violation of the constitutional standard applicable to this claim, it must be dismissed.

### 3. Claims 3 through 9—the "Failure to Provide Notice" Claims, including Claims based on a Failure to Provide Fair Market Rent

■ Plaintiffs' bring claims three through nine under the basic rubric of a failure to provide notice, and thus plaintiffs claim a violation under the Stafford Act or alternatively the Due Process Clause.[31] As to plaintiffs' claims that FEMA's failure to provide notice on these matters constitutes a violation of the Stafford Act, the Court must reject this argument. The Court cannot find where any language of the Stafford Act, as currently drafted, *mandates* FEMA to *affirmatively* notify applicants or recipients of any requirements, benefits, available programs, or the like.[32]

---

28. Estimated at approximately 1.7 million. See Admin. Record, Vol. 3, Tab 90, AR00553; see also Transcript, Vol. 4, 360:16–361:21; 365:19–366:15.

29. For instance, testimony revealed that computer problems, particularly the outdated NEMIS system caused a substantial portion of FEMA's trouble in processing applications. See Transcript, Vol. 3, 321:15–322:12.

30. Additionally, an administrative appeals process exists should applicants contest any portion of FEMA's determination of their claim.

31. These claims are as follows: a failure to provide notice of continued rental assistance requirements, violating both the Stafford Act and the Due Process Clause, a failure to provide notice of increase in temporary housing assistance in violation of the Stafford Act, 42 U.S.C. § 5174(c)(1)(A); 44 C.F.R. § 206.117(b)(1)(i)(A) and (B), and the Due Process Clause, a failure to provide notice of trailer assistance, violating both the Stafford Act and the Due Process Clause, and a failure to provide notice of THA in violation of the Stafford Act Violation, 42 U.S.C. § 5151(a); 44 C.F.R. § 206.11(b).

32. Granted, at one time there *was* a notice provision embedded in the Stafford Act under Section 5174(e)(1)and (2), but for reasons known only to the drafters, this provision was subsequently amended out, see Pub.L. 106–390, § 206(a) (2000), and the Court cannot reinsert it. Section 5174(e)(1) and (2) previously stated:

> (e) Notification
> (1) In general
> Each person who applies for assistance under this section shall be notified regarding the type and amount of any assistance for which such person qualifies. Whenever practicable, such notice shall be provided within 7 days after the date of submission of such application.

As to plaintiffs' Due Process claims, the Court finds similarly that no constitutional violation has occurred with regards to notice. Plaintiffs have failed to show that FEMA's failure to notify them of its policies and procedures regarding re-certification for continued rental assistance, the availability of increased levels of assistance, requirements for certain types of assistance and the like, amount to a deprivation of such assistance. The Court hesitates to seemingly "reward" FEMA for what could be considered cagey behavior with regards to FEMA's ever-changing requirements, as undoubtedly, as the Court has previously found, FEMA's indecision and internal bureaucratic bumbling has strained even the most patient of citizens. But based on the evidence presented, plaintiffs have failed to assert a cognizable due process claim on the issue of notice. Consequently, the Court finds that FEMA's failure to tell plaintiffs of requirements with certainty does not amount to a deprivation as contemplated by the Due Process Clause, and these claims are dismissed.

However, while FEMA may not be *legally* required to notify applicants or recipients of assistance about what FEMA provides, much less provide any data regarding its availability or the requirements for obtaining such assistance, one can only wonder *why* FEMA would choose to *not* do so, as has so often been the case herein. It defies reason that a federal agency whose exclusive provision—and indeed, sole reason for existence—is to assist fellow Americans in a time of natural disaster in meeting their utmost needs would *fail* to notify people of the available services *and* the requirements for engaging those services, in some clear, consistent, and accessible way. It also defies reason that such an agency would be seemingly more concerned with fraud on the individual level[33] than with actually helping those persons whose lives have been literally turned upside down through no fault of their own. It is the Court's determined opinion that the vast majority of Americans, including plaintiffs, do *not* expect the federal government to right all wrongs nor support them indefinitely, nor even *attempt* to make them anywhere near "whole" after a disaster. Clearly such outcomes are simply impractical. However, certainly it would seem that FEMA would at least *try* to make things clear for those for whom it was created to serve. It is undeniable that the human consequences of Katrina and other such disasters reverberate long after the events themselves, and it is FEMA's stated goal to deal with this aftermath as effectively as possible. At its most basic level this *must* mean attention to those individual American taxpayers who are most directly affected by the disaster. Countries, regions, states, cities, municipalities, and businesses are all affected by disasters—this much is true,—and the Court recognizes much of FEMA's mandate is directed towards these institutions. But yet defendants must not forget that the foundations of all of these institutions, including our own government and FEMA itself, are individual people—human beings who must also

---

(2) Information
Notification under this subsection shall provide information regarding—
(A) all forms of such assistance available;
(B) any specific criteria which must be met to qualify for each type of assistance that is available;
(C) any limitations which apply to each type of assistance; and

(D) the address and telephone number of offices responsible for responding to—
(i) appeals of determinations of eligibility for assistance; and
(ii) requests for changes in the type or amount of assistance provided.

**33.** Versus, say "no-bid contracts" and the like.

be cared for, equally, equitably, and fairly.[34]

Rather than hiding behind bureaucratic double-talk, obscure regulations, outdated computer programs, and politically loaded platitudes such as "people need to take care of themselves,[35]" as *the face* of the federal government in the aftermath of Katrina, FEMA's goal *should* have been to foster an environment of openness and honesty with *all* Americans affected by the disaster. Sharing information in simple, clear, and precise terms and delineating the terms and conditions of available assistance in an up-front and forthright manner, does just that. Despite the voluminous "administrative record" provided to the Court by FEMA, and despite FEMA's stated good intentions to the contrary, the Court has seen scant evidence that any such desire for openness and clarity guided *any* of FEMA's communications, and this obfuscation has acted much to the detriment of plaintiffs, and indeed, the entire country. Nevertheless, the Court finds that FEMA is not *legally* required to notify applicants or recipients of assistance about what FEMA provides or how to obtain such assistance. Regrettably this Court must leave any dissatisfaction with the law in this regard for those in the legislative branch to remedy.

### 4. Shared Household Rule[36]

■ Plaintiffs allege both a Stafford Act violation and a Due Process violation for FEMA's alleged failure to properly apply its modified policy on separated households. Per 44 C.F.R. § 206.117(b)(1)(i)(A) and starting as early as September 19, 2005, FEMA voluntarily modified its policy on treating all members of a pre-disaster household as one application for purposes of Katrina victims. See Admin. Record, Vol. 1, Tab 14, AR 00302. FEMA recognized that in many cases those displaced by Katrina were separated during evacuation and were unable, for a variety of reasons, to re-connect after the Storm, and as such, the agency claims it modified its assistance policies accordingly, in effect providing separate assistance to different members of a single pre-disaster household who were separated post-Katrina. It is FEMA's position that under the relevant C.F.R.s, this policy modification was an exercise of FEMA's statutory discretion in providing assistance, and as such, plaintiffs claim herein is not actionable. FEMA further argues that even if actionable, based on the evidence produced at the injunction hearing plaintiffs have failed to prove any violation on behalf of FEMA in implementing these changes. See, e.g. Transcript, Vol. 2, 120:2–19; 120:25–121:23; Vol. 4, 400:23–402:6; 457:13–20.

The Court finds this claim must be dismissed. Review of the text of 44 C.F.R. § 206.117 reveals that FEMA's implementation of any modification on the provision of assistance based upon one's membership in a certain pre-disaster household is pure-

---

**34.** Indeed this sentiment is recognized in the Stafford Act itself. See, e.g., 42 U.S.C. §§ 5121, 5151(a); *see also Graham v. FEMA*, 149 F.3d 997, 1004–05 (9th Cir.1998) (stating that the intent of Congress in the Stafford Act is "to help individuals ... obtain disaster relief ... [and] the Act's real beneficiaries, the individuals and families who suffer losses due to natural disasters, fall well within the Acts general policy concerns.").

**35.** See, e.g., Transcript of Dec. 9, 2005, p. 169 ("We have come to think of every problem in the United States as a federal problem. We have come to think that the federal government is responsible ...").

**36.** 44 C.F.R. § 206.117(b)(1)(i)(A) states:

(A) FEMA will include all members of a pre-disaster household in a single registration and will provide assistance for one temporary housing residence, unless the Regional Director or his/her designee determines that the size or nature of the household requires that we provide assistance for more than one residence.

ly discretionary. Additionally, the Court credits the Administrative Record, that per FEMA's written policies and verbal pronouncements, FEMA is to provide separate assistance for an additional household member if the additional applicant shows that as a result of Katrina the household was separated, and if the applicant is able to provide valid documentation of separately incurred housing expenses, such as a lease or rental receipts. See Admin. Record, Vol. 1, Tab 8, AR00290; Vol. 2, Tab 67, AR00474; Vol. 3, Tab 91, AR 00560, Tab 99, AR 00738; Vol. 3, Tab 106, AR00750.

The Court recognizes that certain disaster victims may be denied assistance because they are unable to produce the required documentation, and that this inability could potentially be due to FEMA's initial wrongful denial of their claim (especially if it came prior to the policy modification). The Court further recognizes that FEMA's process for dealing with separated household members is not perfect, and the Court urges FEMA to consider a clearer and more inclusive policy for the future;[37] however, under the applicable legal standard, the Court finds FEMA has acted reasonably within the bounds of its discretion in attempting to prevent fraudulent duplication of benefits while carrying out its separated household policy. The Court also notes that there is an appeal process for any denial determination.

Finally, the Court cannot find any constitutional aspect to plaintiffs' claims under the Shared Household Rule. The declaratory evidence submitted by plaintiffs, indicates that certain persons were denied assistance due to their membership in a pre-disaster household that had already received assistance. However, this evidence does not indicate that these same declarants were subsequently denied again after submitting the required documentation of a lease or rental receipts. While the Court finds that recipients of temporary housing assistance do have a property interest in such assistance, under the facts presented, the Court finds that this interest is not implicated via FEMA's utilization, pursuant to its regulations, of its discretion in the *manner* in which such assistance is provided. Plaintiffs have failed to adequately demonstrate that FEMA's interpretation of the Shared Household Rule in relation to the victims of Hurricane Katrina has wrought the requisite deprivation of any constitutional interest. Consequently these claims are dismissed.

### 5. SBA Loan Requirement

█ Plaintiffs urge the Court to make permanent its December 12, 2005 injunction Order regarding the "SBA Loan application requirement" issue, 42 U.S.C. § 5174(a)(2), specifically whether an SBA Loan application must be filled by applicants in order to obtain housing assis-

---

**37.** This point is illustrated via the following exchange between FEMA's representative, Donna Dannels, and counsel for plaintiffs at the permanent injunction hearing, see Transcript, Vol. 2, 130:23–131:11:

> Q: Tell me if this is fair. In order for [a separated household member] to get the funding, they had to prove to you, in effect, that they didn't need the funding in the first place?
> A: No, they have to—
> Q: You had to show a rent receipt to get the funding you haven't gotten yet?

> A: They have to demonstrate that the household is separated and they have that need.
> Q: The first person didn't so the remedial puts a higher stringency on someone who has no money at all and you think that was an ameliorative effect?
> A: I believe it is what is required for us in these sorts of situations, in order to prevent widespread fraud, as to how [sic] some sort of documentation.

tance.[38] After hearing substantial evidence on this claim at the injunction hearing, the Court finds that a permanent injunction is warranted. FEMA cannot be responsible for changing people's perceptions, and the Court recognizes that FEMA may do all it can to assure applicants for Temporary Housing Assistance that they need not file an SBA loan application in order to receive such assistance, and yet, applicants may still believe otherwise. However, per the statutory language of 42 U.S.C. § 5174(a)(2), FEMA *must* do all it can.

Bolstering the Court's view is that FEMA's representative at the permanent injunction hearing stated that a February 13, 2006 FEMA press release entitled "SBA Loan Application Necessary for Assistance," see Pltf.'s Exh. 4, was essentially *not* in violation of the Court's December 12, 2005 Order because "for it to say 'other assistance' does not preclude someone or tell them that they will not get housing assistance if they don't apply for an SBA loan." See Transcript, Vol. 2 161:19–22. First, the Court notes that this release was issued well after the Court's December 12, 2005 order which, due to the substantial confusion amongst applicants, required FEMA to make clear that under the Stafford Act an SBA Loan Application was *not* necessary for housing assistance. Second, as to whether this subsequent February release substantively violates the Court's December Order, that question is not

squarely before the Court herein. However, the Court finds that as the impetus behind the December Order was to *reduce* confusion amongst applicants, such a release, with its confusing and incorrect headline, and technical emphasis on "other programmatic assistance" appearing only in the text of the release, certainly seems to violate the *spirit* of the Court's Order, if not its literal terms. Most citizens, while charged with the knowledge of the law, are not nearly the experts in the various categories of available assistance as, say, a FEMA representative. The Court finds it highly probable that most citizens affected by a disaster will not know the difference between "housing assistance," "other needs assistance," "other programmatic assistance" and the like. It was this confusion that the Court's original Order meant to address, but apparently it still remains. Thus the Court sees no reason to lift the injunction at this time, and consequently, in order to allay any residual confusion amongst applicants, the preliminary injunction, as modified by the Court's Modified Order dated January 12, 2006, shall be made permanent.[39]

## 6. Violation of the Nondiscrimination Provisions of the Stafford Act and its Implementing Regulations[40]

■ Plaintiffs allege that FEMA has violated certain provisions of both the Stafford Act and the Code of Federal

**38.** 42 U.S.C. § 5174(a)(2) states:

(2) Under paragraph (1), an individual or household shall not be denied assistance under paragraph (1), (3), or (4) of subsection (c) solely on the basis that the individual or household has not applied for or received any loan or other financial assistance from the Small Business Administration or any other Federal agency.

**39.** Given that the Stafford Act contains mandatory language with regards to this requirement and that the Court has already found a

statute-based violation, the Court will not address plaintiffs' constitutional concerns as to this claim.

**40.** As found in 42 U.S.C. § 5151(a) (see n. 23, *supra)* and 44 C.F.R. § 206.11(b). 44 C.F.R. § 206.11(b) states:

(b) All personnel carrying out Federal major disaster or emergency assistance functions, including the distribution of supplies, the processing of the applications, and other relief and assistance activities, shall perform their work in an equitable

Regulations due to its delays in provision and denials of Temporary Housing Assistance, its failure to properly promulgate the Shared Household Rule to applicants, and its failure to de-link applications for assistance from the completion of a SBA loan application. FEMA's main argument in response is that 42 U.S.C. § 5151(a) requires only that FEMA promulgate *regulations* insuring the "equitable and impartial" processing of applications for assistance without any discrimination on the basis of, *inter alia*, "economic status." FEMA argues that Section 5151(a) is not an enforceable, substantive command, but rather a directive for FEMA to enact certain directives, such as 44 C.F.R. § 206.11(b).

To hold, as FEMA argues, that 42 U.S.C. § 5151(a) and 44 C.F.R. § 206.11(b) mean only that FEMA must instruct its individual personnel to, in effect, "be fair," places formalistic reasoning over substance. The Court will not credit an interpretation that would theoretically allow a federal agency's philosophy or policies to be grounded in a discriminatory animus just as long as there were no individual personnel who carried them out. Consequently, as previously held in the original December 12, 2005 Order, the Court finds that Congress, in enacting the Stafford Act clearly mandated that " ... relief and assistance activities shall be accomplished in an equitable and impartial manner without discrimination on the grounds of ... economic status." 42 U.S.C. § 5151(a); *see also Graham v. FEMA*, 149 F.3d 997, 1004–05 (9th Cir.1998) (stating that the intent of Congress in the Stafford Act is "to help individuals ... obtain disaster relief ... [and] the Act's real beneficiaries, the individuals and families who suffer losses due to natural disasters, fall well within the Acts general policy concerns.").

It is very evident to the Court that Hurricane Katrina did not discriminate based on economic power, as the wealthy as well as the poor were substantially affected. The question becomes, then, whether the evidence presented reveals that *FEMA,* in administering its disaster assistance programs, has somehow impermissibly discriminated against applicants. FEMA argues that "people who are economically disadvantaged will always be more in need of federal disaster assistance," see Def.'s Post–Trial Brief, p. 3, and this inevitable fact does not mean that FEMA's actions violate any discriminatory prohibition. After careful review of the record, the Court agrees. The Court finds that plaintiffs have failed to allege a colorable claim of discrimination, economic or otherwise. While the Court finds FEMA's handling of the aftermath of Hurricane Katrina to have been unorganized, highly bureaucratic, and detached, the practicalities of the circumstances wrought by such a large disaster also loom large. Even the most sensitive and prepared of government actors would have struggled with the magnitude of Katrina, and inevitably those with economic resources will recover more quickly than those without. The statute charges FEMA with acting fairly and equitably across the board, regardless of economic status. While much evidence has been presented as to whether a particular factual situation renders applicants eligible or ineligible, there has been no evidence presented which demonstrates that applicants were delayed or denied assistance due to their economic status.

### 7. Termination of Short–Term Lodging Program—Due Process Violation

Per the Court's previous Orders, plaintiffs now seek a permanent injunction en-

and impartial manner, without discrimination on the grounds of race, color, religion, nationality, sex, age, or economic status.

joining FEMA from failing to give any evacuee in the Short Term Lodging Program (Section 403) at least two weeks from the date of receiving a determination of their application for assistance (i.e., either approval for *and* receipt of assistance, or a denial of assistance), to remain their FEMA-subsidized hotel or motel. FEMA has stated that the agency has already "continued that program until two weeks after a participant receives either Section 408 housing assistance or a denial of such assistance." Def.'s Post–Trial Brief, p. 3, n. 3. Since the parties are apparently in agreement, the Court will solidify this arrangement via permanent injunction.

## 8. Denials and Delays of Housing Assistance as a violation of the APA

■ The final claim brought by plaintiffs is a challenge under various provisions of the Administrative Procedures Act, arguing that FEMA's delays and denials of housing assistance violate 5 U.S.C. §§ 706(1), (2)(A), and 706(2)(C).[41] Plaintiffs also allege violations of agency rulemaking requirements under 5 U.S.C. § 553 and 42 U.S.C. § 5165c. Plaintiffs argue that FEMA's extensive delays in providing assistance constitute unreasonable delays and action unlawfully withheld and that FEMA's denial of assistance based upon their Shared Household Rule and SBA loan application requirement constitute unlawfully withheld agency action as well, all in violation of 5 U.S.C. § 706(1). Also, FEMA's extensive delays in providing THA and their denials of THA based upon the Shared Household Rule and the SBA loan application requirement and their inconsistent application of these rules

are all actions which are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, a violation of 5 U.S.C. § 706(2)(A); and/or constitute action in excess of FEMA's statutory authority and in violation of 5 U.S.C. § 706(2)(C). See Rec. Doc. No. 105, ¶¶ 277–78. FEMA is also adopting and implementing polices, rules, and regulations which violate the rulemaking requirements under 5 U.S.C. § 553 and 42 U.S.C. § 5165c. See Rec. Doc. No. 105, ¶ 279. Additionally, FEMA's decision to set assistance at a level based on a national average of HUD-compiled FMRs was arbitrary and capricious due to FEMA's own recognition that the amount of assistance provided to evacuees under such a formula was largely inadequate to meet their housing needs.

FEMA states that because the Stafford Act provides that the government "shall not be liable" for any claim based on a federal agency's or employee's "exercise or performance of or the failure to exercise or perform a discretionary function or duty," 42 U.S.C. § 5148, the APA does not apply. The APA specifically states that it does not provide review of agency action to the extent that "statutes preclude judicial review" or "agency action is *committed to agency discretion* by law," 5 U.S.C. § 701(a)(1), (2)(emphasis added), and all of the functions and duties involved in this case are clearly "discretionary functions." Consequently these claims must fail.

Under the first prong of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), if congressional intent can be determined by using "traditional tools of statutory construction," then

**41.** 5 U.S.C. § 706(1) states that a reviewing court shall "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(2)(A) states that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law." 5 U.S.C. § 706(2)(C) states that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

that interpretation must be given effect. *Id. (citing NLRB v. United Food & Commercial Workers*, 484 U.S. 112, 123, 108 S.Ct. 413, 98 L.Ed.2d 429 (1987)). On the other hand, if "the statute is silent or ambiguous with respect to the specific issue," then deference to a "permissible" agency construction is required. *Id. (citing Chevron*, 467 U.S. at 843, 104 S.Ct. 2778).

With regards to the SBA Loan application requirement issue, the Court has previously found that the statutory language of Section 5174(a)(2) of the Stafford Act is unambiguous. Consequently the Court has ordered FEMA to do all it can to assure applicants for Temporary Housing Assistance that they need not file an SBA loan application. As to the Shared Household Rule, the Court finds that this policy, and its resulting modification, is well within the discretion of FEMA. Based upon review of the administrative record, the Court finds the FEMA's interpretation of its shared household rule and was a product of reasoned decisionmaking and in conformance with its regulations. See 44 C.F.R §§ 206.113(a), 206.117(b)(1)(i)(A), (ii)(B). Despite the hurdles some separated household members may face in providing rent receipts and other items in order to receive an additional assistance payment, the Court finds such measures are reasonably necessary given FEMA's competing mandate to prevent fraud and duplication of benefits under 42 U.S.C. § 5155. FEMA's implementation of this policy was a reasonable exercise of its discretion under the APA and FEMA's regulations.

As to FEMA's provision of continuing rental assistance, the Court notes that because those evacuees who have already legitimately received housing assistance must have qualified and met the initial eligibility requirements for such assistance in order to have gotten it in the first place, then those recipients clearly have protected due process interests in the continuing receipt of said assistance (specifically, "continuing rental assistance"). While not squarely argued by the parties herein, the Court assumes that these persons share a similar status as other recipients in public benefits programs such that FEMA must clearly delineate to recipients the necessary standards and requirements to continue receiving such rental assistance, as outlined in 44 C.F.R. § 206.114.[42] The

---

**42.** 44 C.F.R. § 206.114 is entitled "Criteria for continued assistance." and states, in pertinent part:

(a) FEMA expects all recipients of assistance under this subpart to obtain and occupy permanent housing at the earliest possible time. FEMA may provide continued housing assistance during the period of assistance, but not to exceed the maximum amount of assistance for the program, based on need, and generally only when adequate, alternate housing is not available or when the permanent housing plan has not been fulfilled through no fault of the applicant.

(b) Additional criteria for continued assistance.

(1) All applicants requesting continued rent assistance must establish a realistic permanent housing plan no later than the first certification for continued assistance. Applicants will be required to provided documentation showing that they are making efforts to obtain permanent housing.

(2) Applicants requesting continued rent assistance must submit rent receipts to show that they have exhausted the FEMA rent funds, and provide documentation identifying the continuing need.

(3) FEMA generally expects that pre-disaster renters will use their initial rental assistance to obtain permanent housing. However, we may certify them, during the period of assistance, for continued rent assistance when adequate, alternate housing is not available, or when they have not realized a permanent housing plan through no fault of their own.

(4) FEMA may certify pre-disaster owners for continued rent assistance, during the period of assistance, when adequate, alternate housing is not available, or

Court understands that to some degree FEMA is already doing this via the NEMIS computer system. NEMIS is apparently set up to automatically generate a letter to recipients on the fortieth day of their rental assistance payment cycle, reminding recipients of what is required in order to be re-certified for future rent payments. FEMA testified that this was done in order to ensure that recipients do not suffer from a "gap" period whereby their previous rental funds have been exhausted, and they are unable to pay the next month's rent in advance or by the first of the month, as usually required by a lease. See Transcript, Vol. 4, 396:17–398:11.[43] Given that FEMA has already taken affirmative steps in this area to ensure continued receipt of said assistance, the Court sees no reason to enter an Order memorializing such arrangement at this time; however should problems arise the Court notes it would not hesitate to revisit the issue.

Finally, as to FEMA's decision to set the first tranche of continuing rental assistance at a level based on a national average of HUD-compiled FMRs, the Court cannot find that the use of such a formula was arbitrary or capricious. 42 U.S.C. § 5174(c)(1)(A)(ii) clearly states that "the amount of assistance ... *shall* be based on the *fair market rent* for the accommodation provided." Id. (emphasis added). The interpretive regulation instructs that "FEMA *will* base the rental assistance on the Department of Housing and Urban Development's current fair market rates for existing rental units [and] FEMA *will* further base the applicable rate on the household's bedroom requirement and the

location of the rental unit." 44 C.F.R. § 206.117(b)(1)(i)(B) (emphasis added). The Court has reviewed the Record and finds that FEMA's issuance of the $2358 payment was in accordance with its existing regulations in that it both was based upon the HUD rates as instructed by the C.F.R. but also constituted a fair market rent figure, as contemplated by the Stafford Act, for the majority of recipients. The Court finds that FEMA's use of this figure, while inadequate in some areas, was a reasonable exercise of its discretion, especially given the social policy concerns involved, including FEMA's attempt to issue a reasonable amount assistance as quickly as possible to a large group of widely dispersed and very needy persons. Furthermore, the Court finds that FEMA's recognition that such payments were not in all cases adequate, and thus, its issuance of follow-up guidance to its personnel about how to obtain additional assistance for those persons living in more expensive areas, see Admin. Record, Vol. 19, Tabs 615–640, as well as HUD's continued revision of its FMR rates for affected areas, see Notice, 71 Fed.Reg. 11286 (March 6, 2006), and FEMA's commission of a follow-up market research study to be used for future disasters, are all reasonable responses to this problem and well within agency discretion.

Accordingly,

**IT IS ORDERED THAT** with regards to 42 U.S.C. § 5174(a)(2) (the "SBA Loan application requirement" issue) defendants are **HEREBY RESTRAINED AND ENJOINED FROM** requiring applicants for Temporary Housing Assistance to com-

---

when they have not realized a permanent housing plan through no fault of their own.

**43.** See also Transcript, Vol. 4, 470:15–18. "[FEMA] is setting a timer in NEMIS so that a letter goes out to [recipients] on day 40

reminding them to please provide us all ... documentation within the next ten days so that we are certain they don't have that gap [between exhaustion of one tranche of rental assistance and receipt of the next tranche of rental assistance]."

plete an SBA loan application or apply for an SBA loan as a prerequisite to applying for or receiving Temporary Housing Assistance, or from mis-communicating the nature of Section 5174 to any Applicant so inquiring.

**IT IS FURTHER ORDERED THAT** defendants must continue to notify those applicants who, as a result of any past miscommunication, filled out an unnecessary SBA loan application, or may not have pursued assistance because they were told that an applicant must apply for a SBA loan in order to obtain Temporary Housing Assistance. Defendants must continue to notify applicants and potential applicants that no such requirement exists and that no applications will be held up for Temporary Housing Assistance processing due to an SBA Loan application not being filled out, or being filled out incorrectly, unnecessarily, and/or superfluously. Defendants must continue to publicize the rule that only those applications requesting Other Needs Assistance as defined by the Stafford Act and determined by FEMA will be required to fill out an SBA Loan Application, and that in no cases will such a Loan Application be required for Temporary Housing Assistance.

**IT IS FURTHER ORDERED** that with regards to Section 403 and Section 502 of the Stafford Act (42 U.S.C. §§ 5170b and 5192) and the funding of the Short–Term Lodging Program under Section 408, defendants are **HEREBY RESTRAINED AND ENJOINED FROM** failing to give any evacuee currently participating in the Short–Term Lodging program two (2) weeks from the time of receiving a determination of their application for assistance, namely either (a) approval for *and* receipt of assistance, or (b) a denial determination, to remain in their present FEMA-subsidized hotel or motel before their participation in the Short–Term Lodging program is terminated. Consequently, every

evacuee currently participating in the Short–Term Lodging program who has applied for Temporary Housing Assistance under Section 408 shall have **two (2) weeks** from the time of receiving a determination of their application for assistance, namely either (a) approval for *and* receipt of assistance, or (b) a denial determination, to remain in their present FEMA-subsidized hotel or motel before their participation in the Short–Term Lodging program is terminated. For purposes of this Order, the date of "receipt of assistance" and the date of a "denial determination" shall be **seven (7) days** after FEMA sends the award or denial notice to the address that the participant provides to FEMA.

**IT IS FURTHER ORDERED** that defendants' Motion to Dismiss (Rec.Doc. No. 32) is hereby **GRANTED in PART** such that plaintiffs' remaining causes of action, specifically, plaintiffs' first and second causes of action for failure to provide temporary housing assistance (see Third Amended Complt., Rec. Doc. No. 105, ¶¶ 165–175); third through ninth causes of action for failure to provide notice (*id.* at ¶¶ 176–222); tenth and eleventh causes of action for violations of the shared household rule (*id.* at ¶¶ 223–240); fourteenth and fifteenth causes of action for violations of the Stafford Act Nondiscrimination Provisions (*id.* at ¶¶ 256–267); and seventeenth cause of action for violations of the Administrative Procedure Act (*id.* at ¶¶ 275–279) are hereby **DISMISSED** with prejudice.